No. 48,049

STATE OF KANSAS, *Appellee*, v. JERRY MARK QUINN, *Appellant*.

(549 P. 2d 1000)

Opinion filed May 8, 1976.

*Charles S. Scott*, of Scott, Scott, Scott and Scott, of Topeka, argued the cause and was on the brief for the appellant.

*Dennis C. Sauter*, assistant county attorney, argued the cause and *Curt T. Schneider*, attorney general, and *Paul E. Miller*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Jerry Mark Quinn was convicted by a jury of sale of marihuana. New trial was denied, sentence was adjudged, Quinn was placed on probation and he now appeals.

Appellant's principal contention is that he was entitled to a new

trial by reason of evidence relating to the credibility of the prosecution's principal witness, which evidence was not known to him during the trial and was disclosed by the prosecution only after the jury had rendered its verdict. The evidence consists of testimony by one Allen Raynor in a companion prosecution concerning statements made at the time of the marihuana sale.

We first summarize the pertinent evidence for the prosecution at appellant's trial. On November 13, 1973, Raynor, an undercover agent employed by the Riley county police department, Lyle Hildebrand, a Manhattan police officer, and two K. B. I. agents, David Ballintine and Dale Finger, were engaged in a drug investigation in Manhattan. About 10:00 p. m. they were in the Aggieville area observing one Thomas Patrick Zeller, who was confined to a wheelchair and was reputed to be involved in drug activities. The agents engaged Zeller in conversation. In a few minutes a car drove up and parked near Zeller's wheelchair. Willard Hodges was driving the car, appellant Jerry Mark Quinn was sitting on the passenger side in the front seat and appellant's cousin, Michael Quinn, was in the back seat. After some conversation between the parties, and the passing around of a hand-rolled cigarette which appeared to be marihuana, Hodges told Zeller and the agents he had one lid of marihuana which he would sell for twenty dollars. Officer Raynor said he thought the price was "pretty steep" but he relayed the offer to agent Ballintine. Ballintine similarly expressed belief the price was very high but stated he would buy the lid.

At this point, according to Raynor's testimony, Hodges began having second thoughts about making the sale to a stranger, but appellant remarked, "Hell, I'll do it [make the sale], if you [referring to Hodges] don't".

After being assured by Zeller that it was all right to make the sale, Hodges reached down into the glove compartment in the console or in that area and produced a bag of marihuana. Hodges handed the bag to appellant who in turn handed it to Zeller, who passed it to agent Ballintine. Ballintine then gave Zeller a twenty dollar bill which Zeller handed to appellant. At this point Ballintine announced that all three occupants of the automobile and Zeller were under arrest.

Officer Raynor and two of the other three officers who participated in the incident testified. Neither of these two officers made

any mention in their testimony of appellant's statement that he would make the sale if Hodges didn't.

Appellant did not testify but his cousin Michael and Hodges did. According to them Hodges dealt directly with Zeller in making the sale; Hodges handed the bag directly to Zeller outside the car and Zeller stuck it under his coat and wheeled his chair away from the car over to the agents; Raynor then approached Zeller and asked if he had the drug to sell; Raynor handed Zeller the money and Zeller came back to the car and attempted to give the money to appellant; appellant said he didn't want it, so Zeller simply threw the bill inside the car, at which time the arrests were made. Hodges testified he did not hear appellant say that if he didn't want to sell the lid, then he (appellant) would.

Appellant's trial commenced June 19, 1974, and was concluded the following day. After the jury retired and had been deliberating for some time it requested rereading of the testimony on the passing of the marihuana and the money. This was done and the jury resumed its deliberations. Later the jury returned into open court and requested a further rereading of officer Raynor's testimony ". . . where he testified that someone had made the statement, 'If you don't sell it, I will' ". This part of the testimony was reread to the jury, it resumed deliberations and within fifteen minutes returned a verdit of guilty of sale of marihuana.

Thereafter appellant filed his motion for new trial on several grounds including that of newly discovered evidence. At the hearing of this motion Zeller, Robert Littrell, Paul E. Miller and officer Raynor testified and these facts appeared: Thomas Patrick Zeller and Willard Hodges were charged with the sale of marihuana as a result of their part in the November 13th incident. Zeller's preliminary examination was conducted January 3, 1974. He was represented by Robert Littrell. The state was represented by Paul E. Miller, who was assistant county attorney and who acted as such until his retirement to enter private practice on April 1, 1974. Officer Raynor testified at Zeller's preliminary that there was some hesitation about the marihuana sale in question, whereupon Zeller made the statement to Hodges that if Hodges didn't make the sale he (Zeller) would. No stenographic record was made of this preliminary hearing. Zeller and Hodges later pled guilty to reduced charges.

Paul E. Miller testified that at Zeller's hearing he was particularly concerned with the significance of the statement attributed to Zel-

ler in determining whether Zeller was an agent of the buyer or of the seller. He further testified he interviewed Raynor again in detail in preparation for appellant's preliminary hearing and at no time did Raynor ever mention that appellant had made a similar statement in connection with the incident. Mr. Miller testified he had had some disagreement with the then county attorney, James W. Morrison, over the prosecution of appellant; Morrison remained convinced of appellant's guilt. Appellant thereafter waived his preliminary hearing.

Mr. Miller further testified that after he learned appellant had been convicted in June in a trial in which officer Raynor testified concerning a statement made by appellant, he felt there was a discrepancy and that appellant's counsel should be notified of Raynor's testimony at Zeller's preliminary hearing. Upon his cross-examination by Mr. Morrison this occurred:

"Q. At this time, as I understand what you said, you feel that in your mind Officer Raynor is under an erroneous assumption from what you know, or is absolutely mistaken from what you know and what he told you in preparing for the Quinn case, the Zeller case, and the Hodges case, this is new testimony that you never heard as assistant and therefore either something new that's been created or something absolutely false, one of those three as far as you are concerned?

"A. Well, it's my belief, based upon my recollection and that's why I got involved in this thing in the first place, because it was my recollection that one of those two things happened, either Officer Raynor is mistaken as to what the original testimony was, or during the whole time, over that period of time from November until—well, you told me the dates, sometime in March when I last handled any one of these things, he never advised me of the fact that Quinn also made that statement. I don't know whether he is mistaken, or whether he didn't tell me. All I know is what he testified at the Zeller hearing."

Miller further testified he could not say that appellant was just as involved in the sale as were the others.

Zeller testified that he alone, and not appellant, made the statement that if you don't want to sell it I will. Robert Littrell, who defended Zeller, testified that he took notes of Raynor's testimony at Zeller's preliminary and he underlined in his notes at the time that Raynor attributed the statement in question to Zeller; further that Zeller admitted to him in confidence that he alone had made the statement. Littrell also testified he examined the prosecution file which contained a police report of the incident; the report attributed the statement to Zeller alone.

Officer Raynor testified that both Zeller and appellant had made

similar statements of their willingness to sell the marihuana at the time in question; he said Zeller's statement came when appellant appeared to be having second thoughts about going through with the sale. At the time of the hearing of the motion for new trial the court had before it two police reports of the incident, neither of which made mention of the statement.

Appellant argues he is entitled to a new trial because it has been established the guilty verdict was predicated upon perjured testimony respecting the statement attributed to appellant. That simply is not the case and we cannot so declare. This conclusion is not, however, determinative of appellant's right to a new trial. It does seem clear the statement was a crucial point with the jury. This testimony was a matter of concern to the assistant county attorney who initially investigated the case and who is now Riley county attorney. He felt there was a discrepancy with the testimony given by the same officer at Zeller's preliminary hearing, of which appellant's counsel should be notified and counsel was so notified after the jury trial was over.

The record here does not reveal the extent of the factual investigation of prospective witnesses or evidence made by appellant prior to trial. No record was made of Zeller's preliminary hearing so that resource of information was nonexistent. Officer Raynor did not disclose appellant's damaging statement to the prosecuting attorney who was preparing for appellant's preliminary hearing so it would appear doubtful that pretrial investigation by appellant would have been any more fruitful. And apparently the statement was not mentioned either in a K. B. I. or Manhattan police department report on the affair.

From all the above it appears three things are possible: Officer Raynor was completely truthful in his testimony that both Zeller and appellant had coincidentally made similar statements of intention; he was honestly mistaken; or he was willing to invent when necessary. At best the matter is in doubt. Appellant's part in the marihuana sale was a disputed matter. According to the prosecution's evidence, all he did was to make the statement, relay the marihuana on to Zeller and accept the money from him at the moment of arrest. According to his own evidence he did none of these things. Officer Raynor was the only witness testifying to appellant's statement, to which the jury manifestly attached significance.

In *State v. Kelly*, 216 Kan. 31, 531 P. 2d 60, we recognized the

rule that the prosecution has an affirmative duty, independent of court order, to disclose exculpatory evidence to a criminal defendant (see also ABA Standards of Discovery and Procedure Before Trial, Part II, § 2.1 [c] and [d] [Approved Draft, 1970]). In *Kelly* we quoted approvingly from *United States v. Keogh*, 391 F. 2d 138, 34 ALR 3d 1, the three classifications which have been made of cases involving prosecution suppression of evidence. These are (1) where there is a deliberate bad faith suppression for the purpose of obstructing the defense or intentional failure to disclose evidence which has high probative value and which could not have escaped the prosecutor's attention; (2) where there is a deliberate refusal to honor a request for evidence where the evidence is material to guilt or punishment, irrespective of the prosecutor's good or bad faith in refusing the request; and (3) where suppression was not deliberate and no request for evidence was made, but where hindsight discloses that it was so material that the defense could have put the evidence to significant use. (p. 34.)

The facts in the case at bar come, if at all, only within the third classification, concerning which this court in *Kelly* stated:

"The rule to be applied in this 'oversight' classification of cases may be stated as follows: When the withholding of evidence by the prosecution is not deliberate and in bad faith and when the prosecution has not refused to honor a request for the evidence made at a proper stage of the proceedings, the defendant should be granted a new trial only if the record establishes: (1) that evidence was withheld or suppressed by the prosecution, (2) that the evidence withheld was clearly exculpatory, and (3) that the exculpatory evidence withheld was so material that the withholding of the same from the jury was clearly prejudicial to the defendant." (p. 36.)

In the case at bar was the evidence of Raynor's prior testimony at the Zeller preliminary hearing withheld or suppressed by the prosecution? Clearly the prosecution did not come forward and make known the possible contradiction or coincidence which was apparent in Raynor's two statements. Since the Zeller preliminary was not recorded appellant could not have secured production of Raynor's testimony and the statement apparently was not in any available police report. As between the prosecution and appellant, Raynor's prior statement was uniquely within the knowledge of the prosecution. Therefore, in a real sense, it was withheld or suppressed from the defense.

Was Raynor's statement at the preliminary hearing clearly exculpatory? Standing alone it neither implicated nor exonerated

appellant. But when the same statement is alleged to have been made by two persons during one incident, and is damaging to both, the accuracy of the statement being attributed to both becomes suspect, especially where, as here, no previous mention of the statement was made to the attorney initially charged with appellant's prosecution. No other officer in the arresting party gave this damaging testimony. As we pointed out in *Kelly* (pp. 36, 37) evidence materially affecting credibility of a key prosecution witness may be considered as exculpatory evidence (see also anno.: Withholding Evidence—By Prosecution, 34 ALR 3d 16, § 5 [*b*], p. 47). Under this standard the evidence withheld must be deemed to be sufficiently exculpatory in nature to satisfy the second criterion mentioned in *Kelly*.

Was the exculpatory evidence so material that its withholding from the jury was clearly prejudicial to appellant? We have already touched upon the matter. Attributing the particular statement to appellant appears to have been a crucial factor in his conviction. The evidence of appellant's participation in the sale and his willingness to be a part of it is not strong without that statement. We believe the evidence which was withheld bore sufficiently upon the credibility of the witness that its withholding was prejudicial to appellant. The case presents a unique situation where a jury and not the prosecution, nor judges in hindsight, should make the determination of the credibility of a key witness. (For a somewhat analogous situation involving credibility of an undercover drug agent see *State v. Humphrey*, 217 Kan. 352, 537 P. 2d 155.)

Since new trial must be ordered two other matters raised by appellant should be considered. He urges, and correctly so, that the trial court erred in instructing the jury over his objection, that possession of marihuana is a lesser included offense of the crime of its unlawful sale. In *State v. Woods*, 214 Kan. 739, 522 P. 2d 967, we held that possession of marihuana is not a lesser included offense in a prosecution for the unlawful sale of marihuana, a view to which we have since adhered (*State v. Nix*, 215 Kan. 880, 529 P. 2d 147; *State v. Humphrey*, supra; *State v. Collins*, 217 Kan. 418, 536 P. 2d 1382).

Over appellant's objection the trial court gave the following instruction respecting his failure to testify:

"You should not consider the fact that the defendant did not testify in arriving at your verdict."

The instruction is that stated in PIK Criminal 52.13. Appellant argues the trial court should have amplified the instruction to include the legal basis for it. The trial court did give other routine instructions respecting burden of proof, presumption of innocence, reasonable doubt, and the fact a defendant is not required to prove his innocence, as outlined in PIK Criminal 52.02. As applicable here, the purpose of instructions is to make definitive statements to the jury of the legal principles governing its deliberations. Such instructions should be brief and simple in construction, unslanted in coverage and understandable to lay persons. The instruction here given, when taken in connection with the others mentioned, as it must be, was adequate and is not subject to the criticism raised.

The judgment is reversed and the cause remanded with directions to grant appellant a new trial.

APPROVED BY THE COURT.

Fromme, J., dissenting. Applications for new trial on the ground of newly discovered evidence are not favored by the courts for the reason that the parties have ample opportunity to prepare the case carefully and secure all of the evidence before trial. It is manifest injustice to allow a party to defeat an adverse verdict by alleging what may be the consequence of his own neglect. Such a motion should be subjected to the closest scrutiny by the court and proof must be forthcoming that it could not have been discovered before the trial by the exercise of due diligence.

The matter was fully explored by the trial court when the motion for new trial was denied. There was no abuse of discretion by the court. The alleged statement by Officer Raynor was made at a prior public hearing involving a co-defendant. It was available at the time of the present trial, if inquiry had been made by defendant's attorney.

It is well settled that a new trial will not be granted on the ground of newly discovered evidence where it appears such new evidence can have no other effect than to discredit the testimony of a witness at the original trial, unless the evidence is so strong and convincing that a different result would necessarily follow were a new trial granted. (58 Am. Jur. 2d, New Trial, § 173, p. 388; Anno: 10 A. L. R. 2d 381, 384, § 3.)

The testimony of Officer Raynor at the hearing on the motion for new trial adequately explained the reason why the supposed dis-

crepancy arose. Both Zeller and the defendant Quinn made similar statements to the effect that if Hodge would not make the sale they would.

Attorney Littrell's testimony was not so damaging when considered in light of his cross-examination at the hearing on the motion for new trial. Although he testified the prosecution file contained a police report of the incident which attributed the statement to Zeller alone, both the KBI report and the Manhattan police department report were produced at the hearing. On cross-examination he stated: "As far as I know. It's my recollection that that statement was in there [referring to these two reports], but like I said, I haven't looked at that in four months and *I am mistaken about that*." (Emphasis supplied.)

The state should not be convicted in this case of withholding exculpatory evidence from the defendant. The failure to disclose exculpatory evidence rests largely on the shoulders of a former assistant county attorney, who did not hold that office when defendant was tried. There was no deliberate suppression of evidence by the state and testimony of Zeller, Littrell and Morrison attacking the credibility of Raynor will merely be explained on the ground that there was bad blood between Attorney Littrell and Raynor and that the same or similar statements urging a sale were made by both Zeller and Quinn.

This is not such strong evidence that a different result will necessarily follow at the new trial. The evidence was reasonably discoverable prior to the first trial. The oversight occurred as a consequence of defense counsel's own neglect. The case should be affirmed.

FATZER, C. J., and SCHROEDER, J., join in the foregoing dissenting opinion.