(661 P.2d 798)

No. 53,324

STATE OF KANSAS, *Appellee,* v. MICHELLE E. HECK, *Appellant.*

Opinion filed April 7, 1983.

*Gregory A. Dean,* of Overland Park, for the appellant.

*Robin A. Lewis,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, for the appellee.

Before SWINEHART, P.J., ABBOTT and MEYER, JJ.

SWINEHART, J.: This is an appeal by defendant Michelle E. Heck from a conviction in the District Court of Johnson County for theft of property of a value of $100 or more in violation of K.S.A. 21-3701, a class D felony.

On April 30, 1980, William Bowers, head of security for Gibson's, a retail store in Olathe, received an anonymous phone call informing him that during the next day, May 1, 1980, Sheryl Green, a store employee, was going to attempt to take a layaway out of the store worth over $100, but was only going to pay $25. The caller further advised Bowers that Green would be assisted by someone named Michelle. Acting on this information, store employees found three sacks setting together in the store layaway area. One sack had a layaway sales ticket attached to it, made out to defendant Michelle Heck and initialed "S.G." The employees searched the sacks and inventoried the contents, and then put the articles in new sacks after marking the more expensive items. The sacks contained items not included in the sales ticket. The items had a retail value of over $400. The sales ticket was made out for $25.88.

On May 1, 1980, Bowers and other store employees conducted a surveillance operation in anticipation of the events described by the phone call. Around 7:00 p.m., defendant entered the store, shopped around for a few minutes, and then went to the camera and jewelry department where Sheryl Green was working. Green took the articles defendant had in her shopping cart, placed them in sacks, and took them back to the warehouse. Green then returned with three sacks (the subject layaway), stapled a "paid" sticker on each one of the sacks, and placed them in the defendant's cart. Defendant went through the cash registers area, pulled off half of the paid sticker on each sack for the checker and left the store.

Defendant was stopped outside the store by Bowers, who identified himself and advised her that he needed to look at the merchandise in the sacks. The merchandise was the same as that inventoried the previous evening. Defendant was then arrested and transported to the police station. Green also went to the police station for questioning. Both women were subsequently

charged with theft of over $100 in violation of K.S.A. 21-3701. The cases were then consolidated since they arose out of the same transaction. Since Green's mother was a former employee of the Johnson County District Attorney's office, a special prosecutor was appointed to prosecute Green. The matter was tried before a jury and both women were convicted.

Defendant Heck appeals and raises the following issues: (1) Was the special prosecutor used in this case properly appointed and authorized? (2) Did the State properly receive and preserve the alleged stolen property so as to preserve defendant's statutory and due process rights? (3) Did the State commit prejudicial misconduct in advising witnesses not to talk to defendant's attorneys? (4) Did the trial court err in allowing the State to exercise six peremptory challenges after the defendant had expended all of hers? (5) Did the trial court err in sustaining the State's objections to exculpatory statements of the defendant because such statements were hearsay?

Defendant first contends that James T. Wiglesworth, the State's special prosecutor of the case, was not properly appointed and authorized to prosecute on behalf of the State of Kansas, and consequently, the prosecution is void. Defendant first raised this issue at trial after the jury had been empaneled, testimony had been taken, and jeopardy attached. Defendant's main contention is that the only authorization for a special prosecutor is in the form of a letter dated July 11, 1980, from Clay L. Wirt, Chairman of the Johnson County Board of County Commissioners, to Dennis Moore, Johnson County District Attorney, granting Moore the authority to retain the services of a special prosecutor for the purpose of prosecuting the case against Green. Green's case was consolidated with Heck's on May 2, 1980.

Defendant raises three possible defects with the appointment of a special prosecutor in the State's case against defendant. First, defendant maintains that since the letter does not mention Heck, it cannot serve as authority for an appointment to prosecute her case. Second, defendant argues that the letter is merely from a member of the Board of County Commissioners (albeit the chairman), and does not constitute authority from the board in accordance with K.S.A. 22a-106(d). And finally, defendant raises a related point concerning the lack of board action on the matter. Defendant contends that the board did not pass on any resolution

pertaining to the appointment nor did it discuss the issue at an open meeting.

The trial court characterized defendant's allegation of error as a nonprejudicial procedural irregularity or technicality. We concur. That defendant is not specifically mentioned in the authorization letter is remedied by defendant's case having been consolidated with Green's at the time the letter was written. For all intents and purposes they were the same case at that point; Green's prosecutor would also prosecute Heck.

The authorization of a special prosecutor is routine and purely an administrative function which lends itself to performance by the board chairman rather than by the board in its entirety. At a hearing on defendant's post-trial motions, Robert C. Bacon, the then presiding chairman of the Johnson County Board of County Commissioners, testified that the board routinely permits its chairman to make the decision to grant authority to the district attorney to appoint a special prosecutor. Consequently, defendant's allegation concerning the board chairman's ability to grant authority for the retention of a special prosecutor, absent a formal board meeting, is without merit. Any procedural irregularity which may exist surrounding the special prosecutor's appointment did not have a demonstrable prejudicial effect on defendant. We note that Wiglesworth's appearance was approved by the trial court pursuant to K.S.A. 22-2202(19). We therefore hold that he was properly considered a "prosecuting attorney" who is authorized by law to appear for and on behalf of the State of Kansas in a criminal case.

Defendant next contends that the trial court erred in receiving into evidence the alleged stolen property and photographs thereof because the State did not properly receive and preserve the property so as to protect defendant's statutory and due process rights. Defendant specifically alleges that the provisions of K.S.A. 22-2512 and K.S.A. 1982 Supp. 60-472 were not followed by the State. Defendant maintains that the State failed to comply with 22-2512 in that no receipt was given for the property, the property was returned to Gibson's prior to trial without the order of the court and while such property was still needed for evidence, and further that the original paper sacks which contained the property were not preserved as evidence. Defendant maintains that the State failed to comply with 60-472

since the photographs do not bear written descriptions of the property alleged to have been wrongfully taken and the name of the owner of the property, nor is the information required pursuant to 60-472 written under oath as is mandated by the statute. Defendant contends that the State's failure to comply with these statutes resulted in an overall state of confusion.

The State presented evidence indicating that the property in question was first transported to the police station, photographed, then taken back to Gibson's, boxed and sealed and placed in a locked office until an officer from the Olathe Police Department retrieved the property. From that time, the property was either in his possession or in the possession of the crime lab until trial. At trial, the property was identified by the store's security officer as the same property which was contained in the bags carried by defendant out of the store.

In *State v. Stewart*, 219 Kan. 523, 527, 548 P.2d 787 (1976), the court discussed the purpose of K.S.A. 22-2512 and the effect of the State's failure to comply therewith:

"The state concedes that the police officers did not comply with 22-2512 because the officer seizing the property failed to give to the person arrested a receipt particularly describing each item of property being held and by the failure of the officer to file a copy of the same with the magistrate before whom the person arrested was taken. We agree with the state that the intent and purpose of the statute is to provide reasonable safeguards for the care and custody of property seized from persons detained or arrested and subsequently utilized as evidence in criminal actions. Police officers should comply with the statute and under certain circumstances their failure to do so might well preclude the admission of seized articles into evidence at the trial. *The failure to comply with the statute, however, does not as a matter of law prevent the admission of the seized articles into evidence where the articles are properly identified at the trial and where the evidence shows that the condition of the articles has not been altered and that they are in substantially the same condition as they were at the time they were seized.* The record before us is undisputed that the police officer who seized the articles carefully marked each of the guns with his initials for purposes of identification and at the trial identified the weapons by his marks. There was never any real dispute that the weapons introduced as exhibits at the trial were not the same weapons seized by the police officer at the time of the arrest. Hence we find no error in the admission of the weapons on this ground." (Emphasis supplied.)

In *State v. Bright*, 229 Kan. 185, 188-89, 623 P.2d 917 (1981), the court discussed the effect of deficiencies in the chain of custody of evidence:

"He does raise one additional argument: that the evidence failed to establish a

clear chain of custody to the alleged cocaine, Exhibit No. 1. The only break in the chain was the transfer of the exhibit from the Metro Squad drug safe to the safe at the testing lab. The packet was heavily sealed, marked, initialed and dated, it was fully identified, and there was no evidence of tampering. The law governing this area was recently stated in *State v. McGhee*, 226 Kan. 698, 703, 602 P.2d 1339 (1979), where we said:

" 'The rule is that a party who offers an object into evidence must show that it is *reasonably certain that there have been no material alterations of the object since it was first taken into custody.* It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial court. It is not necessary that all possibility of its being tampered with should be excluded. . . . [This] test for chain of custody has been characterized as "reasonable certainty that no material alterations of the objects occurred."

" '. . . *Any deficiency in the chain of custody should go to the weight rather than to the admissibility of the evidence.*'

"We find no error in the admission of the exhibit; any deficiency in the evidence of chain of custody went to the weight, not the admissibility." (Emphasis supplied.)

In *State v. Antwine & McHenry*, 6 Kan. App. 2d 900, 904-05, 636 P.2d 208 (1981), *rev. denied* 230 Kan. 819 (1982), this court also discussed the failure of the State to comply with K.S.A. 22-2512.

"It is apparent in this case that the State failed to comply with the safeguards and procedure set forth in K.S.A. 1980 Supp. 22-2512. We do not agree with the position of the State that the prosecutor has absolute and unfettered discretion as to what evidence will be retained for trial, although the prosecution does have the discretion to determine what evidence will be used by the State in the prosecution of the case. When the State has in its possession property belonging to another which might be beneficial to an accused who has been charged with a crime involving such property, the same should not be released by the State until notice of an intent to release the property has been given to the accused or his attorney and the release thereof approved by the court having jurisdiction of the action. The defendant in such a case has the right to object and show cause why the property should not be released from *custodia legis*.

"These defendants were originally charged with multiple counts of aggravated robbery and the prosecution simply failed to recognize that the physical evidence released might be utilized by the defense in a subsequent prosecution for theft. No bad faith on the part of the prosecution is shown and considering all of the evidence as contained in the record, no clear prejudice to the appellants is shown. In *State v. Quinn*, 219 Kan. 831, 549 P.2d 1000 (1976), the Supreme Court considered various situations wherein the State failed to disclose to the defendant certain exculpatory evidence. In that case, the court found the failure of the State was not deliberate or in bad faith. The Supreme Court in quoting from *State v. Kelly*, 216 Kan. 31, 36, said:

" ' "The rule to be applied in this 'oversight' classification of cases may be stated as follows: When the withholding of evidence by the prosecution is not deliberate and in bad faith and when the prosecution has not refused to honor a request for the evidence made at a proper stage of the proceedings, the defendant should be granted a new trial only if the record establishes: (1) that evidence was withheld or suppressed by the prosecution, (2) that the evidence withheld was clearly exculpatory, and (3) that the exculpatory evidence withheld was so material that the withholding of the same from the jury was clearly prejudicial to the defendant." ' p. 836.

"While the release of the property in this case was not an 'oversight' by the prosecution, as contemplated in *Kelly*, the rationale of *Kelly* and *Quinn* would seem to be appropriate. *In the absence of a showing that the returned items were clearly exculpatory or that defendants were clearly prejudiced by the failure to have access to the property, the good faith release by the prosecution of property seized in a criminal investigation to the owners thereof does not warrant a reversal of the convictions or a dismissal of the charges against the defendants."* (Emphasis supplied.)

In the present case, although the possibility for alteration or substitution of the property existed upon its return to Gibson's, the record does not contain any evidence which would even remotely suggest that the property was not substantially in the same condition as it was at the time it was seized. The property was identified at trial as being the same property seized. Therefore, the evidence shows a reasonable certainty that there has not been a material alteration of the property since its seizure. In addition, defendant has not made a showing that the paper sacks originally containing the property, which were subsequently returned to Gibson's and apparently discarded, were clearly exculpatory nor that defendant was clearly prejudiced by her failure to have access to the sacks. As was stated in *Bright*, any deficiency in the chain of custody should go to the weight rather than the admissibility of the evidence.

We find defendant's objection concerning 60-472 to be broader on appeal than as raised at trial. Consequently, only defendant's objection to the extent it was raised at trial will be considered since a point not raised before, or presented to, the trial court cannot be raised for the first time on appeal. *Anderson v. Overland Park Credit Union,* 231 Kan. 97, Syl. ¶ 6, 643 P.2d 120 (1982). At trial, defendant maintained the photographs in question were inadmissible under K.S.A. 1982 Supp. 60-472 since the affidavits which accompanied them did not provide the name of the arresting officer. The court overruled defendant's objection and was satisfied with the foundation presented. The trial court

stated: "It is enough that the witness was present and observed the photographs being taken as well as verifying what the property depicted therein, in fact, is. That evidence is acceptable to the Court as if the witness has taken the photographs himself." The record reveals that the actual property itself was admitted into evidence, along with the subject photographs. As such, a strict compliance with 60-472 would not be required, since the photographs were not being used as a substitute for the pictured items. Consequently, the photographs of the property were properly admitted, since there was testimony to the effect that they accurately represented the thing photographed. See *Landrum v. Taylor*, 217 Kan. 113, 120, 535 P.2d 406 (1975). Any error possibly resulting from the admission of the pictures or the lack of the arresting officer's name on the accompanying affidavit is harmless in light of the admission of the stolen property itself.

Defendant next contends that the State committed prejudicial misconduct in advising two of the State's witnesses not to talk to defendant's attorney. An examination of the record reveals that the evidence would not support, as defendant maintains, a finding that the prosecuting attorney told the two witnesses not to talk with defense counsel. Even if the prosecuting attorney had ordered the witnesses not to speak, defendant has not shown any demonstrable prejudice. Both witnesses testified fully at the preliminary hearing. See *State v. Gress*, 210 Kan. 850, 854-55, 504 P.2d 256 (1972), and *State v. Clark*, 125 Kan. 791, 796, 266 Pac. 37 (1928). Any statements made by the witnesses could have been obtained from the prosecution pursuant to K.S.A. 22-3213. Any exculpatory evidence not revealed in the preliminary hearing would have been revealed by the prosecution pursuant to the Code of Professional Responsibility, DR 7-103 (B) (230 Kan. cxxiii). We further note that any such activity by a prosecutor would have been in contravention of the Code of Professional Responsibility, DR 7-109 (230 Kan. cxxvi).

Defendant next contends that the trial court erred in allowing the State to exercise its six remaining peremptory challenges after the two defendants had fully expended their challenges. Each defendant was afforded six peremptory challenges pursuant to K.S.A. 22-3412(c) and the prosecution had twelve such challenges, pursuant to 22-3412(f). Apparently the trial court alternated the exercise of the parties' peremptory challenges by

having the defendants challenge one each and then the State challenge a juror. This pattern continued until the defendants had used up their respective six challenges. The State, of course, had six remaining challenges and the trial court then allowed the State to exercise those six. Not until after the jury was selected did defendant complain about the method employed by the trial court. Defendant then suggested that a better method would have been to allow a defendant to challenge a juror and then the State, followed by the other defendant and then the State again. The trial court made the following statement in regard to defendant's position:

"I appreciate your position. On the other hand, obviously, if the Court had employed the process that you suggest, then that would necessarily or could be claimed to result in prejudice to the second defendant, Heck, in that the State would have the opportunity to—for two strikes before that defendant got the first one.

"So, you see, there's no way this can be done that is not subject to being criticized.

"Mr. Merker: I hate to critize [sic] Your Honor.

"The Court: That's all right. There has to be a process to accomplish that. It *does not matter to the Court how it's done. If the counsel had suggested to the Court in advance and suggested an alternate procedure, i [sic] would have had no objection to proceeding that way.*" (Emphasis supplied.)

The selection of jurors is within the discretion of the trial court, and such discretion will not be reversed on appeal absent a showing of abuse of discretion. *State v. Ekis,* 2 Kan. App. 2d 658, 660, 586 P.2d 288 (1978), *rev. denied* 225 Kan. 846 (1979). In *Ekis* this court also restated the well-accepted rule found in 47 Am. Jur. 2d, Jury § 192, p. 783, that it is "[a] fundamental principle that a party or an accused has no vested right to any particular juror or jurors; all that he can insist on is an impartial jury of the requisite number in his own case and, at the most, a substantial compliance with the statutes governing the selection and summoning of jurors."

In *State v. Brown,* 4 Kan. App. 2d 729, Syl. ¶ 9, 610 P.2d 655 (1980), this court again stated, "The manner and place where peremptory challenges are made is within the sound discretion of the trial court."

Defendant's complaint concerning the jury selection is well taken. The method employed by the trial court was not the wisest choice; clearly the method of exercising peremptory challenges outlined by defendant would have been preferable.

We cannot find, however, that the trial court's chosen method constitutes reversible error. Defendant did not make a timely objection and was not demonstrably prejudiced, in light of the overwhelming weight of evidence presented in the case supporting her conviction.

Defendant finally contends that the trial court erred in sustaining the State's objection to defendant's exculpatory statements as hearsay. Defendant maintains that the statements in question fall under two hearsay exceptions. K.S.A. 1982 Supp. 60-460(*d*)(1) and (2):

> "*Contemporaneous statements and statements admissible on ground of necessity generally.* A statement which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, (2) while the declarant was under the stress of a nervous excitement caused by such perception . . . ."

On appeal, defendant contends that the statement excluded was made outside of Gibson's in the parking lot immediately after defendant was stopped. In her brief defendant fails to pinpoint exactly where in the trial the alleged error occurred. Our careful review of the record reveals that a hearsay objection was made to the admission of testimony concerning an exculpatory statement made by defendant while being interviewed at the police station rather than immediately outside the store. Under such a set of facts, we can only conclude that the trial court did not err in excluding such testimony since it does not fall within any hearsay exception. Even if defendant's version of the facts were to be substantiated by the record on appeal, it would be our conclusion that any resulting error would be harmless, given the weight of the evidence against defendant. See *State v. Johnson*, 231 Kan. 151, Syl. ¶ 7, 643 P.2d 146 (1982).

The judgment of the trial court is affirmed.