(98 P.3d 294)
No. 89,990

STATE OF KANSAS, *Appellee,* v. CARLTON L. MAYES, *Appellant.*

Opinion filed January 9, 2004.

*Rick Kittel,* assistant appellate defender, for appellant.

*Matt J. Maloney,* assistant district attorney, *Nola Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before JOHNSON, P.J., GREEN, J., and ROGG, S.J.

GREEN, J.: Carlton Mayes appeals from his jury trial conviction of felony theft in violation of K.S.A. 2002 Supp. 21-3701(a)(1). Mayes raises four issues on appeal. He first argues that the trial judge denied his right to a fair trial when she prompted and assisted the State during examination of witnesses. We disagree. Although the trial judge assisted the prosecutor several times during the trial, she did not display any partiality or bias that would have influenced the jury. Accordingly, we find that there was no judicial misconduct. Mayes' next argument is that the trial court erred in failing to instruct on the lesser included offense of attempted theft. We also disagree. Even though Mayes never left the parking lot of the

J.C. Penney's store, he obtained unauthorized control over the items when he concealed them in a shopping bag, left the stockroom from which he took the items, and exited the store. As a result, the evidence presented at trial did not support an attempted theft instruction.

Mayes next contends that the trial court erroneously admitted photographs which failed to comply with K.S.A. 60-472. We agree with this argument. Because the State did not present an adequate foundation under K.S.A. 60-472 when introducing photographs of the stolen items into evidence, we find that they should not have been admitted. Although admission of photographs would constitute harmless error in some factual situations, these pictures were necessary to convict Mayes of felony theft because there was conflicting testimony as to the particular items recovered. Nevertheless, the remaining evidence supports a conviction for misdemeanor theft, and we reverse and remand to the trial court to enter a sentence accordingly. Because of this decision, we find it unnecessary to address Mayes' final argument that the trial court should have instructed the jury on misdemeanor theft. We turn now to the facts of the case.

One evening in May 2002, Mayes entered a J.C. Penney's department store in Wichita. Mayes drew the attention of Michael Roths, a J.C. Penney security guard operating the surveillance camera, when he stood at the entryway of a stockroom. Using the camera, Roths noticed a bulkiness in Mayes' pants. The camera captured Mayes entering the sports department's stockroom. Approximately 8 or 9 minutes later, the security camera detected Mayes leaving the stockroom and exiting the store with a Dillard's bag.

At that point, some sort of pursuit occurred, and Mayes ran back into the store. The surveillance videotape indicated that the bag was dropped inside the entrance to the store. Mayes was taken into custody, and Roths walked him to the security office. Roths testified that he recovered the Dillard's bag from the south door and removed various Nike shorts, shirts, and a pair of shoes.

The State charged Mayes with felony theft under K.S.A. 2002 Supp. 21-3701(a)(1). Mayes pled not guilty. At jury trial, the State

offered into evidence photographs of the recovered clothing. Roths testified that he was present when these pictures were taken on May 28 and that they depicted the clothing he retrieved from the bag. He also testified that the pictures were an accurate representation of the scene on May 28. Mayes objected to the admission of the photographs, arguing that they did not comply with the requirements of K.S.A. 60-472. The trial court overruled the objection and admitted the photographs into evidence.

Roths testified that the pictures contained 10 pairs of black Nike shorts, 6 pairs of blue Nike shorts, 8 pairs of blue Nike shorts, 7 pairs of black Nike shorts, 8 pairs of white Nike shorts, 8 pairs of gray Nike shorts, and 1 pair of black Nike shoes. Roths read this information, however, from an itemized list prepared by him and did not describe what he saw in the picture.

The State then presented testimony from Brad Tucker, the J.C. Penney assistant store manager. Reading from a store information item list, he testified about the following merchandise values: black Nike shorts, item 8810, retail $23, cost $10.93; black Nike shorts, item 7031, retail $28, cost $13.34; blue Nike shirt, item 4041, retail $18, cost $8.51; black Nike shirt, item 4061, retail $28, cost $13.34; white Nike shirt, item 4061, retail $28, cost $13.34; gray Nike shorts, item 8810, retail $23, cost $10.93; and black Nike shoes, item 29990, retail $69.95, cost $35.01. Tucker stated that a J.C. Penney store would sometimes sell an item for less than cost if directed by the home office. Tucker also testified that, to his knowledge, Mayes did not have permission to enter the storeroom or to remove items from the store.

At the close of evidence, the trial court reviewed proposed jury instructions. Mayes had submitted a proposed instruction for the lesser included offense of misdemeanor theft. Mayes argued that there was a small amount of evidence which would support this offense and, therefore, the trial court was required to give the instruction. The trial court decided that it would not instruct on misdemeanor theft because it was basically uncontroverted that the value of the property was greater than $500.

The jury found Mayes guilty of theft of property of the value of at least $500 but less than $25,000. Mayes moved for a new trial

and for a judgment of acquittal. He argued that the pictures of the recovered property were not competent because they did not comply with the mandate in K.S.A. 60-472. He also argued that the court should have given the jury an instruction on misdemeanor theft. Mayes contended that there was sufficient evidence to support misdemeanor theft because Tucker testified that J.C. Penney would sell merchandise below the wholesale amount. The trial court overruled these motions based on its previous rulings. Mayes was sentenced to 13 months in jail with 12 months' postrelease supervision.

First, Mayes argues that the trial judge denied his right to a fair trial when she prompted and assisted the prosecutor during examination of witnesses. Mayes contends that the trial judge's assistance to the prosecutor established what the jury could interpret as a personal prejudice favoring the prosecution because her behavior made it appear as if she wanted to help the State proceed with its case.

"An appellate court's standard of review is unlimited in cases alleging judicial misconduct during trial. [Citation omitted.]" *State v. Miller*, 274 Kan. 113, 118, 49 P.3d 458 (2002). "The party alleging judicial misconduct bears the burden of showing his or her substantial rights were prejudiced. *State v. Gadelkarim*, 256 Kan. 671, 681, 887 P.2d 88 (1994)." *Miller*, 274 Kan. at 118.

" 'Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding such alleged misconduct. In order to warrant or require the granting of a new trial, it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party. A mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment. If a proper and reasonable construction will render the remark unobjectionable, the remark is not prejudicial.' [Citation omitted.]" *State v. Kleypas*, 272 Kan. 894, 996-97, 40 P.3d 139 (2001), *cert. denied* 537 U.S. 834 (2002).

Mayes points to four comments made by the trial judge which indicate judicial misconduct. Several times during trial, Mayes objected to the State's questioning of witnesses. Although the trial judge sustained some of these objections, she commented to the prosecutor after a few of these objections. Specifically, after three

of Mayes' objections for lack of foundation, the trial judge told the State to "[l]ay a foundation" or to "lay a better foundation." The trial judge also assisted the State in rephrasing a question. Mayes objected when the State asked Tucker if Mayes had permission to remove property from the J.C. Penney store. The trial judge stated: "Ask him how he would know something like this, please." Mayes contends that this assistance appeared as if the trial judge wanted to help the State proceed with its case, and the jury could interpret her behavior as a personal prejudice favoring the prosecution. He also asserts that these comments may have led the jury to conclude that Mayes' objections were unfounded or improper.

In cases which our Supreme Court has reversed a conviction because of judicial misconduct, the trial judge's comments and behavior have been overtly biased and prejudicial. For example, in *State v. Plunkett*, 257 Kan. 135, 891 P.2d 370 (1995), our Supreme Court reversed the defendant's conviction when the trial judge had commented about defense counsel's motive for sitting away from the bench, stated that he knew something which he could not reveal about the defense attorney, and said that an objection was made by defense counsel for personal reasons. In addition, the trial judge made several positive comments about the prosecutor and none about defense counsel during the course of the trial. 257 Kan. at 138-40. Similarly, in *State v. Hamilton*, 240 Kan. 539, 731 P.2d 863 (1987), the trial judge commented on and gave his opinion of the evidence, admonished defense counsel for its manner of presenting the defense, and told defense counsel during questioning of a witness: "[L]et's don't plant germs that don't exist." 240 Kan. at 544. When comparing the trial judge's comments in these other cases with the trial judge's behavior in the case at bar, there is no similarity. The trial judge in this case did not make any disparaging comments about the defense, and her statements did not express any type of bias towards the State.

In addressing Mayes' arguments, we find the case of *State v. Norwood*, 217 Kan. 150, 535 P.2d 996 (1975), to be instructive. In that case, the trial judge made several comments during the trial of the case. At one point, the trial judge assisted the prosecutor in phrasing a question as to value after the defendant had objected

to the form of the question. Our Supreme Court noted that the purpose of a criminal trial is to ascertain the truth of the charges against the defendant. The trial judge may use whatever reasonable means are necessary to see that the full truth is developed by the evidence. 217 Kan. at 152. Our Supreme Court concluded: "Not only was no prejudice shown by defendant, but it appears the trial court's conduct was a highly commendable effort to expedite trial and develop the full truth." 217 Kan. at 153.

Similar to the facts of *Norwood*, the trial judge's comments served to expedite the admission of relevant evidence. Although her comments came in response to Mayes' objections, she did not indicate that defense counsel's conduct was improper. In fact, she sustained several of the objections. Moreover, before the jury retired to deliberations, she instructed them that her rulings, statements, and actions were not meant to indicate any opinion as to what the verdict should be. Based upon the nature of the trial judge's comments and the fact that her conduct was not biased or partial to either party, we find that there was no judicial misconduct which would warrant reversal of Mayes' conviction.

Next, Mayes argues that the trial court committed clear error when it failed to instruct on the lesser included offense of attempted theft. Mayes asserts that he never obtained control over the property, as required by the theft statute, because he never left the sight of the J.C. Penney's store security.

Mayes admits that he failed to make a specific request for a jury instruction on attempted theft. In order to preserve an issue regarding a jury instruction for a lesser included offense, the defendant must have asserted to the trial court that such an instruction was warranted. If no objection or request was made, the instruction or the failure to give an instruction must be clearly erroneous. *State v. Saiz*, 269 Kan. 657, 661, 7 P.3d 1214 (2000). The failure to give an instruction " ' "is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict." ' " *State v. Sims*, 262 Kan. 165, 172, 936 P.2d 779 (1997) (quoting *State v. Valentine*, 260 Kan. 431, 433, 921 P.2d 770 [1996]).

Mayes contends that the cases of *State v. Bateson*, 266 Kan. 238, 970 P.2d 1000 (1998), and *State v. Long*, 234 Kan. 580, 675 P.2d 832 (1984), *overruled on other grounds State v. Keeler*, 238 Kan. 356, 365, 710 P.2d 1279 (1985), support his argument that the taking was incomplete. Mayes' reliance on these cases is misplaced because our Supreme Court's holdings in both *Long* and *Bateson* support the fact that the taking was complete when Mayes left the store.

In *Bateson*, the defendant had taken money from a purse located in an office. When the owner of the purse returned and discovered that the money was missing, the defendant walked rapidly away from the office. Our Supreme Court stated that the defendant gained peaceable possession of the property in the absence of the owner and that he had control of the property when he left the owner's office. 266 Kan. at 245-46.

Similarly, in *Long*, the defendant took money from a locked box located within a sale building. When the owner entered the building, she noticed the tampered money box and the defendant standing beside it. She positioned herself in the doorway to prevent the defendant from leaving, but he forced himself by her and left the building. Our Supreme Court held that the taking was not completed until the defendant overcame by force the owner's efforts to prevent him from leaving. 234 Kan. at 586.

The issue in both *Long* and *Bateson* was whether the defendant had taken the property by force or fear and, therefore, had committed the crime of robbery instead of theft. Although these cases do not address the same factual circumstances that are present in this case, they offer insight as to when a defendant has gained control over stolen property. In both *Long* and *Bateson*, the defendant had control of the property once he left the office or building where the property was located. Although the defendants in these cases encountered the owner of the property before they left the area from where they had taken the property, this fact does not determine whether a defendant has control over an item. See *State v. Aldershof*, 220 Kan. 798, 556 P.2d 371 (1976) (taking completed when purse snatcher grabbed purses and ran out of building, not after he resisted purse owner in parking lot of building).

In *Long*, our Supreme Court determined: "A thief does not obtain the complete, independent and absolute possession and control of the money or property adverse to the rights of the owner necessary to constitute a taking where the taking is immediately resisted by the owner before the thief can remove it from the premises or from the owner's presence." 234 Kan. at 580, Syl. ¶ 2. Here, Mayes did not encounter any immediate resistance within the store and was able to gain possession of the property by placing it within the Dillard's bag in the stockroom without any interference.

Although Mayes encountered resistance when he stepped outside, the evidence reveals that he had control of the merchandise by the time he left the store. In *State v. Saylor*, 228 Kan. 498, 500-01, 618 P.2d 1166 (1980), our Supreme Court stated that when a customer in a self-service store conceals property of the store, fails to make proper payment, and leaves with the property concealed, a theft has occurred. In this case, the evidence revealed all of these factors. Specifically, the surveillance videotape recorded Mayes entering and exiting the stockroom and then leaving the store with a Dillard's bag. Testimony at trial revealed that the bag contained items which Mayes was not authorized to remove from the store. Although Mayes ran back in the store and dropped the bag when he encountered security outside, he had already obtained unauthorized control over the merchandise by concealing the items and leaving the store.

Based upon the evidence at trial which revealed that Mayes obtained unauthorized control over the clothing by the time he left the store, we find that there was no real possibility that the jury would have returned a different verdict if instructed on attempted theft. Therefore, the trial court was not required to instruct on this offense.

Nevertheless, Mayes contends that J.C. Penney recovered all of the merchandise and, therefore, it was not permanently deprived of possession, use, or ownership, as required by K.S.A. 2002 Supp. 21-3701(a). Mayes misinterprets the statute, however, because K.S.A. 2002 Supp. 21-3701(a)(1) only requires that there be *intent* to permanently deprive the owner of property. It does not require that the owner actually suffer permanent deprivation of property.

Intent was established by the fact that Mayes concealed the items and exited the store. As a result, we find that the jury was properly instructed.

Next, Mayes argues that the trial court erred by admitting photographs into evidence depicting the items taken from the J.C. Penney's store. Essentially, Mayes asserts that the prosecutor failed to comply with the requirements of K.S.A. 60-472 before introducing the photographs into evidence, and that this noncompliance amounted to reversible error.

Mayes raises an issue of statutory interpretation over which this court's review is unlimited. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). Our Supreme Court has also determined "that photographs are generally admissible upon proper foundation and identification, if they accurately represent matters relevant to the issues in the case, and that their admission rests in the sound judicial discretion of the court. [Citation omitted.]" *State v. Hollaway*, 214 Kan. 636, 639, 522 P.2d 364 (1974).

K.S.A. 60-472 provides:

"In any prosecution for a crime involving the wrongful taking of property, photographs of the property alleged to have been wrongfully taken may be deemed competent evidence of such property and may be admissible in the prosecution to the same extent as if such property had been introduced as evidence. Such photographs shall bear a written description of the property alleged to have been wrongfully taken, the name of the owner of the property taken, the location where the alleged wrongful taking occurred, the name of the investigating law enforcement officer, the date the photograph was taken and the name of the photographer. Such writing shall be made under oath by the investigating law enforcement officer and the photograph identified by the signature of the photographer. Upon the filing of such photograph and writing with the law enforcement authority or court holding such property as evidence, such property may be returned to the owner from whom the property was taken."

Here, it is apparent that the photographs did not strictly comply with the requirements of K.S.A. 60-472. They did not contain a written description of the property, the name of the investigating law enforcement officer, the owner of the clothing, the location of the theft, the date, or the name of the photographer, as required by the statute. Nevertheless, the State argues that Roths' testimony provided a sufficient foundation for the photographs' admission

into evidence under *State v. Shoemake*, 228 Kan. 572, 618 P.2d 1201 (1980).

In *Shoemake*, our Supreme Court determined that photographs of stolen currency and other items were properly admitted at trial, even though they failed to strictly comply with K.S.A. 60-472. At trial, one officer stated that he had recovered the stolen property and had made his report by listing the currency by serial number and denomination. This officer also identified the picture as an accurate depiction of the currency by comparing the serial numbers in his report with the serial numbers in the pictures. Another officer testified that he was present when the picture was taken and that the case number on the picture corresponded with the case number in his file. Our Supreme Court determined that a substantial foundation had been presented and that admission of the pictures could not have prejudiced the defendant. Our Supreme Court also noted that the evidence was clear and undisputed as to the items taken in the theft. 228 Kan. at 574-75.

The case before this court is factually distinguishable from *Shoemake*. The only person testifying to the accuracy of the photographs in this case is Roths, the security guard for J.C. Penney. Unlike the witnesses in *Shoemake*, Roths was not a law enforcement officer as required by K.S.A. 60-472. Additionally, although Roths testified that he was present when the pictures were taken and was the person who recovered the property, this did not amount to a proper foundation under K.S.A. 60-472. In contrast to the officer in *Shoemake*, Roths did not compare the merchandise in the pictures with his itemized list to ensure accuracy. In fact, when comparing Roths' testimony to the items in the pictures, his statements were inaccurate because the pictures depicted shorts, shirts, and shoes, while he read from his report that shorts and shoes were recovered from Mayes. Based upon the conflict between Roths' testimony and the pictured items, a sufficient foundation was not presented to establish the accuracy of the photographs.

Because the photographs did not qualify for admission under K.S.A. 60-472 and, in addition, because a sufficient foundation was not otherwise established for their admission, we find that the trial court erred by admitting the photographs. Nevertheless, our anal-

ysis does not end there. Before an error is found to be harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the result at trial. *State v. Thompkins*, 271 Kan. 324, 335, 21 P.3d 997 (2001). Any error that does not affect the substantial rights of the parties must be disregarded. See K.S.A. 60-261.

In *State v. Heck*, 8 Kan. App. 2d 496, 661 P.2d 798 (1983), the defendant argued that photographs depicting stolen property should not have been admitted because they failed to strictly comply with K.S.A. 60-472 by not listing the investigating officer's name. Specifically, we held that "[a]ny error possibly resulting from the admission of the pictures or the lack of the arresting officer's name on the accompanying affidavit is harmless in light of the admission of the stolen property itself." 8 Kan. App. 2d at 503.

Different from the facts of *Heck*, the stolen clothing was not admitted into evidence. In fact, the pictures were the only representation of the stolen items. Furthermore, the evidence in this case reveals that the pictures were necessary to sustain a conviction of felony theft. Although Roths testified as to the specific items recovered from Mayes, this testimony was inconsistent with Tucker's testimony regarding the value of the items. Tucker testified as to the value of shorts, shirts, and shoes, while Roths testified about the quantity of only shorts and shoes that were recovered. Although it appears that Roths mistakenly read his report because earlier in his testimony he made a general statement that he recovered shorts, shirts, and shoes from the Dillard's bag, the photographs were necessary to resolve the inconsistency in testimony. Without the photographs, we cannot say that the jury would have been able to determine the specific items that were stolen which was necessary to compute the total value to support the felony theft. As a result, the admission of the photographs was not harmless error, and we reverse Mayes' conviction of felony theft.

Nevertheless, the evidence clearly reveals that Mayes was guilty of theft. The elements affected by the exclusion of the photographs are the specific items taken and the total value of the merchandise. The exclusion of the pictures does not change the fact that Mayes was captured on videotape exiting the store with a Dillard's bag

which testimony revealed contained stolen items. As a result, the evidence was sufficient to sustain a conviction for misdemeanor theft under K.S.A. 2002 Supp. 21-3701(b)(3). When a defendant has been convicted of a higher offense but the evidence supports only a lesser included offense, he or she should be sentenced for the lesser offense. *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993); *State v. Smith*, 4 Kan. App. 2d 149, 153, 603 P.2d 638 (1979). In *State v. Moss*, 221 Kan. 47, 50, 557 P.2d 1292 (1976), our Supreme Court determined that the evidence was insufficient to support defendant's conviction of attempted felony theft and remanded the case for resentencing in accordance with the lesser included offense of attempted misdemeanor theft. Likewise, we remand to the trial court for resentencing for misdemeanor theft in accordance with K.S.A. 2002 Supp. 21-3701(b)(3).

Finally, Mayes argues that the trial court erred by denying his request for a jury instruction on the lesser included offense of misdemeanor theft. Because we have already determined that the evidence supported a misdemeanor theft conviction and not a felony theft conviction, it is unnecessary to address this argument any further.

Reversed and remanded for resentencing.