NOT DESIGNATED FOR PUBLICATION

No. 121,917

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRENT SIMONSSON,
*Appellant.*

MEMORANDUM OPINION

Appeal from Decatur District Court; PRESTON PRATT, judge. Opinion filed February 19, 2021. Affirmed.

*Donald E. Anderson II*, of Law Office of Donald E. Anderson II, LLC, of Great Bend, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and POWELL, JJ.

PER CURIAM: Brent Simonsson appeals the jury's guilty verdict for misdemeanor theft, arguing insufficient evidence supports his conviction because the evidence did not show he intended to exercise unauthorized control over the property or permanently deprive the owner of the property. After reviewing the evidence in the light most favorable to the State, we disagree and affirm Simonsson's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In late June 2018, James Long noticed some property was missing from his yard and reported the missing property to the police. Officer Dalton Downing of the Oberlin Police Department responded to the report. James informed Downing some restaurant booths and chairs were missing from his front yard.

On July 11, 2018, several days after taking the report, Downing responded to a message to contact the victims. James' wife, Laurie Long, informed Downing she had spotted some of the stolen items on a dirt lot in Oberlin. Downing drove by the lot and saw two restaurant booths.

Downing contacted the lot's owner, Chris May, who told him that on July 1st or 2nd, Simonsson came to his shop and asked another man, Gary Alstrom, to help him move some furniture. According to May, Simonsson and Alstrom left and returned later with three wooden chairs and two booths. Simonsson asked May if he wanted to borrow the furniture for a while before Simonsson took them to his brother's pond. May told Simonsson he would take the chairs for his customers but did not want the booths. Simonsson left the chairs but returned later and left the booths in the corner of May's lot.

Alstrom confirmed he went with Simonsson to pick up the furniture. Alstrom and Simonsson arrived at the house with the booths and chairs, picked them up out of the yard, loaded them, and took them away.

Later on the same day Downing had interviewed May and Alstrom, Simonsson contacted Decatur County Dispatch, twice asking for an officer to call him back. Downing returned Simonsson's call, and Simonsson told Downing he saw the booths and chairs sitting on the curb and believed they were free to take, so he did.

The State charged Simonsson with misdemeanor theft. A jury trial was held on April 4, 2019. James testified the restaurant booths were sitting on his front lawn, approximately 6 to 8 feet from his house, closer to his house than to the curb. James' front lawn had two dead spots where the booths had been sitting. James testified that none of the booths or the chairs were sitting near the curb or edge of the street and none had any signs saying the items were free to take. James did not give anyone permission to take the booths or chairs. James said the booths had been outside for a day-and-a-half or two days but later said they had been there for a week total over two periods of time.

Laurie testified she first realized the booths were missing on June 29, 2018. Laurie said the booths had left dead spots on the front lawn because they had been there for around 2 weeks but later testified the items had been in the front yard for 20 days. Laurie explained the chairs were against the back of the storage shed on their property near the end of the driveway farthest from the street when they were taken. After reporting the theft, Laurie noticed the booths when driving around town and informed the police.

Alstrom testified he could not remember the exact day he helped Simonsson, but it was before July 4. Alstrom identified the booths and chairs as the furniture he helped Simonsson load into his vehicle. Alstrom testified they took the chairs from right beside the house and the booths from in front of the house; none were by the curb. Alstrom did not know whether Simonsson had permission from the owners to take the items but assumed he did. Alstrom did not see any signs saying the furniture was free to take.

May testified Simonsson brought the furniture to his property and asked him if he wanted to borrow the booths for the Fourth of July and borrow the chairs for a while before Simonsson took the booths and chairs to his brother's pond.

Downing testified about his report and largely recounted the above narration. He saw the dead spots in the grass where the booths had been sitting in the middle of James'

3

yard and testified Simonsson told him he thought the items were on the curb and free to take.

Simonsson testified in his own defense. He admitted he took the items from James' yard on July 2, 2018. Simonsson said the yard was unkept with over 20 chairs, exercise equipment, and booths in the yard for at least a month. Simonsson said he knocked on James' door twice and never received an answer, leading him to believe the furniture was abandoned and free to take.

The jury convicted Simonsson of misdemeanor theft, and the district court sentenced Simonsson to 1 year in jail but suspended all but 60 days.

Simonsson timely appeals.

DID SUFFICIENT EVIDENCE SUPPORT SIMONSSON'S THEFT CONVICTION?

Simonsson argues the evidence presented at his jury trial was insufficient to support his theft conviction. Simonsson asserts he lacked the intent to exercise unauthorized control over the property or to permanently deprive James of the property because Simonsson believed the property had been abandoned. The State counters that the evidence at trial shows James did not abandon the furniture, meaning Simonsson's control over them was unauthorized. The State also argues Simonsson did intend to permanently deprive James of his property because Simonsson told May he intended to take the items to his brother's pond.

*Standard of Review*

When a criminal defendant challenges the sufficiency of the evidence, the proper standard of review is "'whether, after reviewing all the evidence in a light most favorable

to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). A guilty verdict will only be reversed in the "rare case when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). Circumstantial evidence may sustain a conviction of even the gravest offense if there is evidence to support a finding that each element of the charged crime was met. *State v. Richardson*, 289 Kan. 118, 127, 209 P.3d 696 (2009).

*Analysis*

The State charged Simonsson with theft under K.S.A. 2017 Supp. 21-5801(a)(1), which defines theft as "[o]btaining or exerting unauthorized control" over the owner's property "*with intent* to permanently deprive the owner of the possession, use or benefit of the owner's property." (Emphasis added.) A person acts "'with intent' . . . when it is such person's conscious objective or desire to engage in the conduct or cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are specific intent crimes." K.S.A. 2020 Supp. 21-5202(h). Thus, theft is a specific intent crime. Specific intent is a factual question "for the jury which may be established by acts, circumstances, and inferences and need not be shown by direct proof." *State v. Mitchell*, 262 Kan. 434, 437, 939 P.2d 879 (1997).

While conceding it is "probably not the strongest argument," Simonsson argues he lacked intent to unlawfully and intentionally obtain or exert unauthorized control over the booths and chairs because he believed the items had been abandoned. However, to establish that James did abandon the booths and chairs, Simonsson needed to show that James relinquished the booths and chairs with the intent to abandon them. See *Davis v.*

5

*Odell*, 240 Kan. 261, 269, 729 P.2d 1117 (1986). The evidence presented at trial shows the contrary. The booths and chairs were on James' property, with the booths sitting in the middle of his lawn and the chairs next to the shed on the part of the driveway farthest from the street. James never told Simonsson he could take the furniture, and no sign indicated the booths or chairs were free to take. The booths had been moved into the yard for a garage sale, and they and the chairs were in the yard with some of James' other property because he was in the process of selling the house. Simonsson could not point to any evidence showing the booths and chairs had been abandoned other than his own subjective belief. In fact, James had not abandoned the booths and chairs; he still owned them.

Because James still owned the booths and chairs and had not given Simonsson permission to take them, Simonsson's control over the booths and chairs was unauthorized. Simonsson's subjective belief that the booths and chairs were free to take does not change this.

In addition to obtaining unauthorized control over the property, the State also had to prove Simonsson had the intent to permanently deprive James of possession of the booths and chairs. "'Deprive permanently' means to . . . [t]ake from the owner the possession, use or benefit of property, without an intent to restore the same." K.S.A. 2020 Supp. 21-5111(f)(1). "'The intent to deprive permanently must be inferred from the overt facts and circumstances proven. . . . The crucial factual inquiry will be directed to the use the defendant intended when he obtained or exercised unauthorized control.'" *State v. Warren*, 221 Kan. 10, 13, 557 P.2d 1248 (1976).

When Simonsson and Alstrom arrived at May's shop with the booths and chairs, Simonsson asked if May would like to borrow the furniture for his Fourth of July show. May said he would take the chairs for customers at his shop but did not want the booths. Simonsson left the booths in May's lot. May testified Simonsson told him he could

6

borrow the furniture for a while before Simonsson took them to his brother's pond. Simonsson's intent to take the booths and chairs to his brother's pond after letting May borrow them is evidence that Simonsson did not intend to return the furniture to James; his intent was to keep the furniture permanently.

Simonsson counters this evidence with the argument that he could not have had the intent to deprive James of his property permanently because he did not believe James, or anyone, owned the booths and chairs. Simonsson's defense is that because he believed the property had been abandoned, he could not form the requisite intent to deprive someone of it permanently.

Simonsson relies on a burglary case, *State v. Wilkins*, 269 Kan. 256, 7 P.3d 252 (2000), for support. *Wilkins* lists factors for a court to consider when determining if a defendant entered a dwelling with the intent to commit a theft. 269 Kan. 256, Syl. ¶ 4. But burglary was not charged here, and Simonsson's discussion of the factors is really a list of the evidence Simonsson believes supports his belief the booths and chairs were abandoned.

But as we have already discussed, Simonsson's abandonment theory lacks merit. Viewing the evidence in the light most favorable to the State shows the property was not abandoned. The booths were in the middle of James' yard, not on the curb as Simonsson claimed, and the chairs were on the part of the driveway farthest away from the street. James never gave Simonsson permission to take the furniture, and no sign indicated it was free to take. Simonsson did not intend to return the booths or chairs to James. He offered the furniture for May to borrow and said he intended to take it to his brother's pond. The fact he called the police to explain what happened once he learned of the investigation does not show he lacked the intent to deprive James of the booths and chairs permanently. See *State v. Mayes*, 33 Kan. App. 2d 9, 17, 98 P.3d 294 (2004) (explaining

7

statute does not require owner suffer actual permanent deprivation of property, only that defendant intended to permanently deprive owner of property).

As sufficient evidence was presented at trial to allow a reasonable jury to find Simonsson exercised unauthorized control over James' booths and chairs and intended to permanently deprive James of his property, we see no error in the jury's verdict convicting Simonsson of misdemeanor theft.

Affirmed.