No. 58,927
No. 58,980

STATE OF KANSAS, *Appellee*, v. GENE HAMILTON, *Appellant.*

(731 P.2d 863)

Opinion filed January 16, 1987.

*Benjamin C. Wood*, chief appellate defender, argued the cause and was on the brief for appellant.

*Geary N. Gorup*, assistant district attorney, argued the cause and *Robert T. Stephan*, attorney general, and *Clark V. Owens*, district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: The appeals of Gene Hamilton from the sentence imposed upon him after a plea of guilty to one count of aggravated arson (K.S.A. 21-3719) in case No. 58,927, and from his convictions by a jury of aggravated robbery (K.S.A. 21-3427) and aggravated battery (K.S.A. 21-3414) in case No. 58,980, have been consolidated in this court.

We will first consider the appeal from sentence in case No. 58,927. Following a plea of guilty to one count of aggravated arson, Hamilton was sentenced by Judge Ray Hodge to imprisonment for a term of five years to life. His application for probation was denied and he was sent to the Kansas Reception and Diagnostic Center (KRDC) for examination and a report. A subsequent motion for modification of sentence was also denied.

The familiar rule in Kansas is that a sentence imposed which is within the statutory limits will not be disturbed on appeal, provided it is within the realm of discretion on the part of the trial court and not a result of partiality or prejudice. *State v. Van Cleave,* 239 Kan. 117, 716 P.2d 580 (1986). The sentence here is within the statutory limits for the class B felony of aggravated arson.

It is contended that the sentence should be set aside for failure of the court to consider the alternatives set out in K.S.A. 21-4601 and K.S.A. 1985 Supp. 21-4603. It appears to be the position of the appellant that as the KRDC was "inclined" to recommend probation in a well-structured and highly monitored setting and, as Judge Hodge did not clearly state his consideration of the various alternatives in the statutes cited above, he abused his discretion. If this case is considered as an attempt to appeal from a denial of probation, we held in *State v. Haines,* 238 Kan. 478, Syl. ¶ 2, 712 P.2d 1211, *cert. denied* _____ U.S. _____ (1986), that "[u]nder K.S.A. 22-3602(a) there is no direct appeal of a denial of probation after a plea of guilty or nolo contendere," and the appeal is precluded. In *State v. Harrold,* 239 Kan. 645, 722 P.2d 563 (1986), we overruled certain statements made in *Haines* but did not address the issue of an appeal from probation. We now affirm our holding in *Haines* as it applies to an appeal from a denial of probation.

As the appellant has couched his appeal as one from the original sentence and denial of his motion for a modification thereof, we will consider that issue. At the time of the hearing on

the motion for modification of sentence, Hamilton had been convicted of the crimes of aggravated robbery and aggravated battery committed while he was free on bond in this case. Clearly there was no abuse of discretion in denying the motion to modify the sentence.

At the time of the original sentence, Hamilton had not been examined at the KRDC. The presentence and psychological reports made available to the court at the time of sentencing indicated that the defendant was an abuser of heroin, alcohol, and other drugs, and that when the defendant was under the influence of alcohol or drugs, he expressed his anger in an explosive and hostile manner. The court imposed the minimum sentence possible, but set the maximum sentence at the long end of the permissible statutory range awaiting the KRDC report. The court's comments at sentencing indicated, contrary to the contentions of appellant, that the court was deeply concerned about the dangerous propensities of the offender and sought a disposition which would be consistent with the needs of public safety. We find no abuse of discretion, partiality, or prejudice in the sentence originally imposed. The judgment and sentence in Case No. 58,927 must be affirmed.

We now turn to the appeal from the convictions of aggravated robbery and aggravated battery in case No. 58,980. In view of the result reached, it is not necessary to set forth the facts in detail. Suffice it to say there was evidence that Edward J. Washington was threatened and beaten on the night of March 2, 1985, by appellant and one Nathan Lattimore. There was also evidence to support the contentions of the State that appellant and Lattimore took $161.00 from Washington during the encounter.

The first issue raised by appellant is that he was denied his right to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because of the interference, comments, and conduct of Judge Robert D. Watson during the jury trial. It is the position of the appellant that the trial judge interjected himself into the trial of the action to such an extent that Hamilton was deprived of a fair trial. The Supreme Court has long recognized "the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Spencer v. Texas*, 385 U.S. 554, 563-564, 17 L. Ed. 2d 606, 87 S. Ct. 648 (1967), and cases cited therein. Ap-

pellant asserts that the trial judge created an atmosphere during trial which implied that defense counsel was withholding or misstating the evidence, showed partiality to the State's case, and indicated bias on the part of the judge, and that the comments of the judge reflected upon the credibility of the defendant, his defense, and defense counsel.

Hamilton was charged in an amended information with one count of aggravated robbery, one count of aggravated battery, and one count of attempted first-degree murder. Prior to trial, defense counsel unsuccessfully sought dismissal of the aggravated battery and attempted murder charges. The attempted murder charge was subsequently dismissed upon completion of the evidence and prior to submission of the case to the jury. At the beginning of the proceedings before the jury, Judge Watson, during his opening explanation of the case, read the amended information to the jury in order that it would be apprised of the charges against Hamilton. Immediately prior to reading the information, the trial judge stated:

"I might inform the Jurors at this point, that at the time that you get the case for final decision, there may be one count that you'll consider. There may be two counts that you'll consider and or there may be three counts that you'll consider as a result of this. Or it may be under the correct factual situation and legal situation that the Court could take the whole case away from you. *Very doubtful because it is extremely rare where you have an information with more than one count in it, that by the time that you receive the case and receive instructions from the Court, that the Court would be required to say by the law that you heard of three counts but now in your jury room you'll only consider this count.* This is the count that you consider. The rest has been taken care of in a manner which I will explain to you. But you'd be instructed. But at this point, there's three counts pending as a result of accusations, allegations by the State." (Emphasis added.)

Appellant argues that the comments reflected an opinion that the State's case had merit, implied an opinion of guilt, and from the very start of the proceedings cast the trial judge in the role of an advocate partial to the State.

Appellant also points to numerous occasions where the trial judge commented upon the evidence, gave his recollection or opinion of the evidence, and admonished counsel about his manner of presenting and developing his defense. There are numerous incidents of such conduct in the record, not all of which need be detailed here. During cross-examination of the alleged victim, defense counsel was interrupted at least seven

times by the judge's comments upon the testimony, some of which were combined with admonishments to counsel. At the preliminary hearing, the witness had testified he had not drunk any alcoholic beverages on the day of the alleged crimes but during direct examination at trial, he testified to the contrary. The following occurred:

"Q.[by defense counsel] Mr. Washington, you testified that you had nothing to drink on that date. Is that right?
"THE COURT: He didn't testify to that.
"MR. GREENO: Excuse me.
"THE COURT: Twice he's testified that he may have had something to drink on the day. That he was inclined that he probably did 'cause he had beer in the car and he hadn't had a chance to drink it. Now, please state the evidence as it is.
"MR. GREENO: That was a slip of the tongue and I'm sorry."

Judge Watson, who had not conducted the preliminary hearing, was unaware of the prior inconsistent testimony and effectively precluded the defense from possible impeachment of some of the witness' trial testimony as being inconsistent with his prior testimony at the preliminary hearing.

In another exchange on a minor matter wherein the trial judge interrupted with his view of the evidence, defense counsel attempted to abandon the line of questioning whereupon the judge stated:

"THE COURT: I want the evidence to be kept straight on the basis of your questioning."

A few moments later, defense counsel was directed to add to the content of a question although the question was not vague or misleading and no objection had been made by the State.

Again during cross-examination of a detective, who investigated the case, defense counsel was attempting to impeach the witness upon the basis of certain omissions from the officer's report. The following exchange took place:

"Q. Okay. Did Mr. Washington, at any time during your interview, tell you that Mr. Hamilton had stopped Mr. Lattimore from beating him?
"A. I can't recall.
"Q. Okay. Is it in your report anywhere?
"A. I wouldn't know.
"Q. Would you like to take a look at your report?
"A. It may take a while.
"THE COURT: Does counsel know it's in the report?
"MR. GREENO: I know that —

"THE COURT: If you know it's in there, show it to him. There's no need taking time.

"MR. GREENO: I'm sorry. I'm not quite sure if it's appropriate. I don't know if it is in there.

"THE COURT: If you don't, *let's don't plant germs that don't exist*. Any time that you know that's in there and think the witness has a question, with it being his report, you walk forth and show it to him. That's the way to do it.

"MR. GREENO: Thank you, Your Honor.

"THE COURT: Thank you." (Emphasis added.)

Immediately thereafter, there was another interruption:

"Q. It doesn't say anywhere on this report, specifically, that Mr. Washington was advised by Mr. Lattimore that he was going to kill him. Is that correct; with that word?

"A. I don't particularly understand your question.

"Q. I'm sorry. I think we went back over this. I asked you, did Mr. Washington advise you that Mr. Lattimore told him that he was going to take care of him?

"THE COURT: Let me set some guidelines here. You've in effect, made this man your witness because you're beyond the direct examination area. Also, you're examining him on his report. I tell you again, if you know that those facts aren't in that report, don't ask the questions. If you choose to get away from the report, let the witness know, but remember this, you've already had the witness testify that he put everything that he knew about this crime in that report.

"MR. GREENO: Okay.

"THE COURT: Which I doubt is possible.

"MR. GREENO: Well Your Honor, you know, I want to make note I take exception.

"THE COURT: You may take exception. But the Court's aware that nobody can take a report and get every word in it, unless it's taped. There's no evidence that that was taped. You might inquire for the benefit of the Jury—

"MR. GREENO: Excuse me."

During cross-examination of the State's fingerprint expert, concerning a lack of fingerprints, the court remarked, absent any objection by the State:

"It's not going to prove anything. Probably prove that they did a good job of wiping off fingerprints."

The defendant, Gene Hamilton, testified in his own defense and upon cross-examination defense counsel objected to a question as being repetitious. The court stated:

"THE COURT: He hasn't testified extensively. He's testified on the surface. If I remember right, at the first time he told his story, I heard nothing about the using of the gun that he testifies is on the table. Then on cross-examination by the District Attorney, I think he made an estimate of licks by the gun. This is cross-examination, which allows more leeway than it does on direct. Okay. Overruled."

During the same cross-examination, when defense counsel

lodged valid objections, the court advised the State's attorney how to state the questions and further commented upon the court's recollection of the evidence. Numerous other unwarranted intrusions are reflected by the record and we see nothing to be gained by setting forth all of them in detail.

The trial judge is not merely a moderator, but is the governor of the trial. The judge must strive to have the trial conducted in an atmosphere of impartiality and should refrain from remarks or conduct that may injure a litigant. 75 Am. Jur. 2d, Trial § 87.

The impact of statements and conduct of a trial judge on a jury in a criminal proceeding was discussed in the dissenting opinion of Justice Jochems in *State v. Wheat*, 131 Kan. 562, 569, 292 Pac. 793 (1930), 85 A.L.R. 1412.

"The trial judge occupies a high position. He presides over the trial. The jury has great respect for him. They can be easily influenced by the slightest suggestion coming from the court, whether it be a nod of the head, a smile, a frown, or a spoken word. It is therefore imperative that the trial judge shall conduct himself with the utmost caution in order that the unusual power he possesses shall not be abused.

"Juries are composed of human beings. They are drawn from the body of the county and therefore, notwithstanding assertions to the contrary made by some critics of the jury system, it necessarily follows that they are composed of citizens of average intelligence. It is going too far to assume that they are so dumb that improper statements made in their presence do not make any impression on their minds and therefore cannot be prejudicial. On the other hand, it is entirely too much to assume that if an improper statement has been made in their presence and they are told to disregard it, they are so highly intelligent as to be able to proceed with their deliberations and erase such statements entirely from their minds and not be influenced by them. Jurors are not skilled lawyers or judges. They cannot be expected to make the fine distinctions required to shut out from their minds prejudicial or improper statements and thus be exact and impartial judges of their fellow men. Even a judge who has been trained in the law and who knows its niceties and refinements oftentimes finds difficulty in staying within the record and basing his decision solely thereupon, uninfluenced and unprejudiced by some bit of information or knowledge which he may have obtained about the case which does not appear in the record. In the language of one of the columnists of the day, it is well to remember that 'we're all human at that.' "

In *State v. Diaz & Altemay*, 232 Kan. 307, 654 P.2d 425 (1982), the defendant raised similar complaints to those found in the case at bar and, although the convictions were affirmed, the court quoted extensively from *State v. Stoops*, 4 Kan. App. 2d 130, 132, 603 P.2d 221 (1979). In *Stoops*, the Court of Appeals discussed

the standards of judicial conduct and applicable rules of appellate review, stating:

" 'The trial judge should be the exemplar of dignity and impartiality. He should exercise restraint over his conduct and utterances. He should suppress his personal predilections, and control his temper and emotions. He should not permit any person in the courtroom to embroil him in conflict, and he should otherwise avoid conduct on his part which tends to demean the proceedings or to undermine his authority in the courtroom. When it becomes necessary during the trial for him to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, he should do so in a firm, dignified and restrained manner, avoiding repartee, limiting his comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues.' "

"Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding such alleged misconduct; and in order to warrant or require the granting of a new trial it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party. *State v. Thomson*, 188 Kan. 171, 174, 360 P.2d 871 (1961). In a more recent case, *Plains Transport of Kansas, Inc. v. Baldwin*, 217 Kan. 2, 10, 535 P.2d 865 (1975), the Kansas Supreme Court stated:

'We enter our caveat that no comment or remark should be made by a judge, during the trial of an action, which may tend to excite prejudice or hostility in the minds of the jurors toward one of the party-litigants, or sympathy for the other, but a mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment, and, where a construction can properly and reasonably be    given to a remark which will render it unobjectionable, it will not be regarded as prejudicial. (88 C.J.S., Trial § 49, p.124.)' " 4 Kan. App. 2d at 132.

In the recent case of *State v. Starbuck*, 239 Kan. 132, 715 P.2d 1291 (1986), the court was faced with similar complaints about the conduct of Judge Watson during a hearing in which the defendant's probation had been revoked. This court stated:

"Proceedings in court should be so conducted as to reflect the importance and seriousness of the inquiry to ascertain the truth. Throughout the hearing, Judge Watson made comments regarding the evidence submitted by the accused probation violator. During the hearing, the judge repeatedly took over the examination of the witnesses. Occasionally, the judge expressed to the attorney for the defendant his opinions and that his 'patience was wearing thin.'

"Canon 3 of the rules relating to judicial conduct requires that a judge be patient, dignified, and courteous. 235 Kan. clxiii. A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law. He should exercise restraint over his conduct and utterances. If it becomes necessary during a proceeding for the judge to comment upon the conduct of witnesses, counsel or the testimony, he should do so in a firm, dignified and restrained manner, avoiding repartee and refraining from unnecessary disparagement of persons or issues." p. 134.

In *State v. Boyd,* 222 Kan. 155, 563 P.2d 446 (1977), in discussing the role of the trial judge, the court said:

"In recognizing the right of a trial judge to cross-examine witnesses we have always coupled such recognition with words of warning. In *State v. Winchester,* [166 Kan. 512, 203 P.2d 229 (1949)], we stated that where the judge deems it necessary to cross-examine witnesses, he must exercise great care to prevent giving the jury the impression that he is biased against the defendant and he must not forget the function of a judge and assume that of an advocate. The same rule applies with respect to the credibility of a witness and a judge should exercise great care and caution to say nothing within the hearing of the jury which would give them an indication of what he thought about the truth or falsity of any part of the testimony. This admonition was recently repeated in *State v. Jones,* [204 Kan. 719, 466 P.2d 283 (1970)]. These admonitions are prompted by the truism that a jury has a natural tendency to look to the trial judge for guidance, and may find it even where it is not intended. The judge's attitude and the result he supposedly desires may be inferred by the jury from a look, a lifted eyebrow, an inflection of the voice—in many cases without warrant in fact. (*State v. Blake,* [209 Kan. 196, 495 P.2d 905 (1972)].)

"Since the cross-examination of a witness by a trial judge is fraught with such dangerous consequences, if a trial judge sincerely believes that additional information should be obtained from a witness in order to clarify the evidence and enable the jury to arrive at the true facts, the better practice is for the trial judge to discuss the matter with counsel outside the presence of the jury and request counsel to pose the questions to the witness. Such a procedure will accomplish the full development of the truth without a direct participation by the trial judge in the examination of the witness and hence any question as to the judge's bias may be avoided." pp. 158-59.

We recognize that a trial court must control the proceedings in all hearings and trials and that the court has broad discretion and leeway in doing so. However, in the present case, when the entire record is considered, the totality of the circumstances reflecting the judge's injection of himself and his personal beliefs and observations into the trial proceedings convinces us the appellant was seriously prejudiced, his constitutional right to a fair trial was denied, and he must be granted a new trial. In view of our determination, other issues raised on appeal need not be considered.

The judgment in Case No. 58,927 is affirmed. The judgment in Case No. 58,980 is reversed and the case is remanded for a new trial.

ALLEGRUCCI, J., not participating.