NOT DESIGNATED FOR PUBLICATION

No. 118,670

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

VENANCIO VIGIL, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed February 14, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: In 2017, a jury found Venancio Vigil Jr. guilty of attempted second-degree murder and aggravated battery. He was sentenced to a controlling term of 247 months in prison. District Judge Joseph L. McCarville III presided over the preliminary hearing, seven-day jury trial, and sentencing. Vigil was represented by Lynn Burke and Christine Jones.

Vigil appeals the convictions, contending that three instances of judicial comment error by the district judge violated his right to a fair trial. Upon our review, while we find

1

that judicial comment error did occur, we are convinced the comments did not result in reversible error. Accordingly, we affirm Vigil's convictions.

ANALYSIS

On appeal, Vigil points to three instances where he asserts the district judge made improper comments about defense counsel in this criminal proceeding. In the first instance, Vigil complains that during the preliminary hearing the judge said he would "smack" defense counsel if she did not stop talking over a witness' responses to her questions. The second remark occurred during the jury trial when the judge referred to defense counsel's request to recess the trial early because she needed to attend an event involving her daughter. The judge told the jury: "It's one of those mother things." The third group of comments relates to the judge's lengthy admonition to defense counsel regarding cross-examination questions and admission of evidence which, in the judge's opinion, were improper impeachment and contrary to his preferred practice for admitting evidence of out-of-court statements. Based on these three comments, Vigil claims a violation of his right to a fair trial.

A brief summary of the law pertaining to judicial comment error and our standard of review is necessary. First, our Supreme Court has recently distinguished between judicial misconduct and judicial comment error. "[A]n erroneous judicial comment made in front of the jury that is not a jury instruction or legal ruling will be reviewed as 'judicial comment error' under the . . . constitutional harmlessness test." *State v. Boothby*, 310 Kan. 619, 620, 448 P.3d 416 (2019). This distinction places the burden on the party benefitting from the error to show that the error did not affect the outcome in light of the entire record: "We found that erroneous remarks in the form of 'judicial comment error' resemble prosecutorial error. Thus, the 'logic behind [*State v.*] *Sherman* [305 Kan. 88, 109, 378 P.3d 1060 (2016)]'s 'error and prejudice' rubric for prosecutorial error applies

2

with equal force to judicial comment error.' [Citation omitted.]" *State v. Johnson*, 310 Kan. 909, 917, 453 P.3d 281 (2019).

Second, our standard of review provides that appellate courts exercise "'unlimited review over judicial misconduct claims, and review them in light of the particular facts and circumstances surrounding the allegation.' [Citation omitted.]" *Boothby*, 310 Kan. at 624. A judicial comment error inquiry "must be conducted on a case-by-case basis, always informed by existing caselaw concerning when judicial comments fall outside a permissible latitude." 310 Kan. at 627.

Third, and of particular relevance to this appeal where there were no contemporaneous objections to the district judge's comments, "'[w]hen a defendant's right to a fair trial is alleged to have been violated, the judicial comments are reviewable on appeal despite the lack of a contemporaneous objection.' [Citations omitted.]" 310 Kan. at 628.

Finally, to the extent this court reaches a harmless error analysis, the State must show harmless error under the constitutional harmless error standard provided in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), and *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011). Each of the claimed errors will be addressed individually.

*Comments Made During the Preliminary Hearing*

Vigil first complains of comments made by Judge McCarville during the preliminary hearing. Burke was cross-examining the complaining witness, Francisco Gracia Jr., when the court reporter interjected and asked Burke to stop talking over the witness in order to preserve an accurate record. The judge said to Burke, "You've been in

court before, maybe he has but not as much as you before so you need to be sure we have a clean record because you're a professional." Burke replied, "We will work together."

The district judge then said to Gracia, "I'll try and stop you for a minute to clarify. Mr. Gracia, if she interrupts your answer *I'm going to smack her, okay*? She's been doing, been interrupting your answers a lot because you're not saying exactly what she hopes you say." (Emphasis added.) Burke countered, telling Gracia, "I don't know that I want you to say something as much as I want to just be able to clarify." The judge then observed, "Miss Burke, when you interrupt him I guess I don't know why you're interrupting him because if you want an answer you should just let him answer."

Burke did not contemporaneously object to the district judge's remarks. After the preliminary hearing, however, Vigil filed a motion requesting that the judge recuse himself from presiding over the upcoming trial based on his comment made during the preliminary hearing.

In considering Vigil's recusal motion, Judge McCarville explained that he expected Burke to keep an accurate record because she is the professional and, when Burke responded with "[w]e will work together," he believed that Burke did not understand what he was admonishing her for, or that she did not want to admit that she was interrupting the witness. The judge advised that he also wanted to insure the witness understood that he was not going to hold him responsible for Burke's behavior. The judge found there was not a valid basis for recusal and stated that he intended to afford Vigil a fair trial.

Vigil presented the recusal motion to Chief Judge Patricia Macke Dick who held a hearing in accordance with K.S.A. 20-311d(a). In a written order denying the recusal motion, the chief judge wrote:

4

"The Attorney had consistently, during her examination of the witness, interrupted and talked over the witness's answers. The Court should have corrected her before the court reporter had to take steps to preserve the record. When the Attorney chose not to acknowledge her responsibility in creating the problem and failed to make any commitment to change, the Court was left with the likelihood that the witness would be confused or discouraged from giving full answers. The Court had observed that the witness had actually been very responsive to the questions put to him and had not given unresponsive answers but rather answers that quite fairly responded to the questions propounded. Therefore, the Court advised the witness that the Attorney would receive a response from the judge if she continued to interrupt and talk over the witness."

"A reasonable person would not believe that the assigned judge is unable to decide the issues in this case fairly and equitably without bias or prejudice."

Although on appeal Vigil complains of the district judge's comments made during the preliminary hearing, he does not appeal the denial of the recusal motion. Without any substantive argument, Vigil simply complains:  "Judge McCarville, who is male, first expressed hostility toward Burke by threatening her with physical violence during the preliminary hearing."

In response, the State asserts the district judge's comments

"could be interpreted as his effort to control [Burke's] behavior in the courtroom through his rulings from the bench. There is nothing to suggest he was seriously talking about committing physical violence. . . . Nonetheless, the State concedes the comment was error, however it did not affect the outcome of the trial."

We agree with the State. Viewed in context, the district judge's improper comment was a glib remark intended to emphasize the importance of defense counsel not interrupting the witness rather than an actual threat to do bodily harm. Still, the Code of Judicial Conduct specifically requires that a judge "be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the

5

judge deals in an official capacity." (Supreme Court Rule 601B, Canon 2, Rule 2.8(B) (2019 Kan. S. Ct. R. 447); see *State v. Hayden*, 281 Kan. 112, 125, 130 P.3d 24 (2006). Judges should refrain from disrespectful and demeaning remarks in carrying out their official duties since these comments are unnecessary, easily misconstrued as biased, and they distract from proper judicial decorum in the courtroom.

While the district judge's impertinent comments were clearly improper, no jury was present, the comments were brief, and, as found by the chief judge, we discern no bias against Vigil in the content of the remarks. Accordingly, employing the constitutional harmless error test, we are convinced there was no prejudice to Vigil's right to a fair trial.

*Comment Regarding Family Obligation*

During the jury trial, Vigil contends the district judge made a "sexist and disparaging" comment towards Jones. Earlier in the day, out of the presence of the jury, Jones informed the judge that her daughter, a high school senior, was getting recognized at an awards ceremony. Jones asked for "one tiny favor," that the court recess about 10 to 15 minutes early in the evening so she could attend the event. The judge replied, "We'll try as hard as we can." Jones thanked the judge.

At the end of the day, the judge advised the jury, "And for everybody's edification Miss Jones has got a child who has a commitment; she wants to go to that. It's one of those mother things, I guess." The prosecutor then requested a bench conference, after which the judge advised the jury that due to the State's inability to present any further witnesses that day, "the good news is I'm going to let you go early tonight. So we'll be excusing you now, 4:30, or whatever." Jones did not contemporaneously object to the judge's comment.

6

Once again, Vigil's appellate argument is brief. Vigil contends the remark "was just as sexist and disparaging as the one made by the trial judge in *Plunkett* that he was glad the female defense counsel got married because he could not pronounce her former last name." See *State v. Plunkett*, 257 Kan. 135, 138, 891 P.2d 370 (1995).

*Plunkett* provides scant support for Vigil's argument. Although our Supreme Court noted that the trial judge in *Plunkett* made the comment during jury orientation, the basis for finding prejudicial judicial misconduct was:

> "The potential combined effect of Judge Watson's stated suspicion of defense counsel's motive for sitting away from the bench, his praise for the prosecutor, his lack of praise for defense counsel, and his suggestion that he knew something he could not reveal about one of the defense attorneys put Plunkett's credibility in question from the start, before the jury was even selected. The credibility of witnesses was paramount in deciding the outcome of the instant case." 257 Kan. at 139.

In short, the glib reference in *Plunkett* regarding defense counsel's maiden name was not a determining factor in finding reversible error. The judge's other improper comments which implied both partiality to the State and prejudice to defense counsel constituted the more serious judicial misconduct.

Returning to this appeal, the State acknowledges the district judge's comment was in "poor taste" and "not the best use of words by Judge McCarville." Nevertheless, the State argues that the remark did not affect the verdict considering the entire record.

We agree that the remark about maternal obligations was unnecessary, insensitive, and improper. This comment added nothing to the orderly progress of the trial, and the district judge should have dismissed the jury for the day without mentioning Jones' family matter. We reprise the prior legal authority we cited with regards to the judge's preliminary hearing remarks. Additionally, we point to our Supreme Court's guidance

that "[t]he judge's comments and rulings should be limited to what is reasonably required for the orderly progress of the trial and should refrain from unnecessary disparagement of persons or issues." *State v. Miller*, 308 Kan. 1119, 1155, 427 P.3d 907 (2018).

Was this error reversible? Applying the constitutional harmless error test, we are convinced the error did not affect the outcome of the trial in light of the entire record. See *Ward*, 292 Kan. at 568-69. First, although flippant, the remark was not necessarily disparaging of Jones. It could have been positively viewed by the jury as an indication that Jones was not just a lawyer but a devoted mother to her daughter. Second, the jury was informed that the reason for the early evening recess was not due to Jones but the State's inability to procure the next witness. Third, no bias against Vigil was shown, as the record indicates that earlier in the day the judge was agreeable to accommodating Jones' request. The judge's passing comment did not adversely impact Vigil's right to a fair trial.

*Comments Made in Ruling on State's Objections and Admission of Defense Evidence*

Finally, prior to trial and out of the presence of the jury, the district court informed the parties of the procedure they should follow when questioning witnesses. This procedure related to the manner of impeaching witnesses, avoiding hearsay, and the use of evidence from law enforcement bodycam footage. On several occasions, in response to the prosecutor's objections, the district court explained to Burke the reasons for sustaining the prosecutor's objections or not admitting evidence offered by the defense.

The district judge's comments at issue relate to legal rulings he made in response to the prosecutor's objections or the offer of evidence by the defense. However, on appeal, Vigil does not object to the district court's rulings as judicial misconduct. Rather, Vigil objects to the remarks made by the judge in explaining his rulings to defense counsel. As a result, we evaluate whether these comments were judicial comment error.

8

First, Vigil complains of comments made by the district judge in sustaining the State's objections to defense counsel's cross-examination of Officer Bryan Carey. After Burke played video footage from Officer Carey's bodycam the following colloquy occurred:

"Q. (By Ms. Burke) At a certain point in the video we hear someone approaching screaming.

"A. Yes.

"Q. Did you hear that?

"A. I did.

"Q. Who was that person?

"A. I, I do not know who that person was. I believe it was a family member, though.

"Q. Wasn't it, in fact, the alleged victim's niece?

"[THE STATE]: Objection, he just said he doesn't know.

"THE COURT: Miss Burke, I'm—

"MS. BURKE: Judge, I'm just trying—

"THE COURT: I tried to explain it to you, okay. When he says I don't know then *you can't make up facts* and ask him to agree with that. Because if he agreed with that that would be a lie.

"MS. BURKE: I understand, judge. I'm trying to refresh his memory.

"THE COURT: Well, when he says, when he says he doesn't know there is no memory to refresh. You're trying to get him to agree to something that he doesn't know which would not be true. So that's why we have an objection called assumes facts not in evidence.

"MS. BURKE: Thank you, judge." (Emphasis added.)

On appeal, Vigil complains that the district judge's reference to "mak[ing] up facts" amounted to a "chastisement" of Burke in front of the jury.

Viewed in context, we question whether the five words complained of constituted a chastisement of Burke. The district judge's explanation did not tend to discredit defense counsel. The reasons put forth by the judge clarified a rather basic rule of questioning a

witness—if the witness testifies that he or she does not know the answer to the question, it is improper to then suggest a particular fact is the witness' answer. The judge's explanation made clear that he was sustaining the objection because a rule of evidence or procedure was not followed, not that Burke was dishonest.

The second judicial comment which Vigil complains of relates to the district judge's use of the term "turncoat witness" in advising Burke as to his rulings on impeaching a witness and admission of the bodycam footage of Officer Carey. During cross-examination of Officer Carey, the State objected to Burke's question based on the officer's bodycam video footage. The judge sustained the objection whereupon Burke sought guidance from the judge:

> "MS. BURKE:  So, judge, I don't want [the State] to have to continue objecting. So for clarification, if I have a witness subpoenaed I cannot ask the officer he was talking to what he said?
> "THE COURT:  Correct. Until after the witness testifies. As I explained before we brought the jury in this morning, we're going to use the procedure suggested by Professor and Judge Barbara in his book about how you put the witness on and then *find out if they're a turncoat* and then you can confront them with their prior inconsistent statement.
> "MS. BURKE: Thank you, judge. (Emphasis added.)

Shortly thereafter the State objected again to Burke's questions based on hearsay, and the following exchange occurred:

> "THE COURT: Sustained. Miss Burke, this is exactly what I just talked to you about. Okay. You're saying, you're asking for substantive evidence about what stuff was in the video. I've explained to you I don't know how many times so Mr. Schroeder's probably going to just need to kind of assume an athletic stance there and just object so he can object to every one of your questions unless you assume another basis for your

questions other than asking this officer to testify to the, to facts asserted by other people in that video.

      "MS. BURKE: Well, then, judge, I think I'll just need to recall Officer Gates—I'm sorry, Officer Carey after we've had the witnesses testify what they said.

      "THE COURT: You may have to do that, yes."

Later, Burke offered Officer Cory Schmidt's bodycam footage into evidence as an exhibit, and the district judge declined to admit it. The judge pointed out:

      "THE COURT: All right. As I explained to you last week, Miss Burke, we're not going to do trial by video. This falls under KSA 60-460(a) and in reading the treatise of then Professor or Judge Barbara, he had a couple of careers, he talks about the use of this statute and whether or not the court should in its discretion allow prior out of court statements of witnesses who are present for cross-examination. And he says it is a matter which the trial court must determine on the facts of each case by careful exercise of judicial discretion. Generally the court should declare a witness a hostile witness before allowing evidence under 60-460(a) and it goes on to cite some other case, cases.

      "On the previous page he talks about how this, we should have—*this provision is aimed at the turncoat witness who recants prior testimony.* Based upon the available evidence *I have no reason to believe that Officer Schmidt is a turncoat* witness or that he is a hostile witness. In fact, it's my observation he has attempted to respond to each and every one of your questions and therefore there's no reason to admit prior out of court statements.

      . . . .

      "MS. BURKE: Thank you, judge." (Emphases added.)

Vigil argues that the remarks italicized above were improper. He emphasizes that "[b]y explicitly stating that Officer Schmidt was not a 'turncoat', [the judge] endorsed that witness' credibility." On the other hand, the State contends the comments were necessary in light of Burke's failure to comply with the judge's rulings.

11

Burke did not contemporaneously object to the district court's rulings, instructions, or comments. The following day, however, Vigil moved for a mistrial due to the district court's *evidentiary* rulings. Jones informed the judge that the evidence rules allow a party to introduce prior inconsistent statements before a subpoenaed witness has testified. In response, Judge McCarville acknowledged that Jones was correct, but that the procedure he employed during trial was the better practice. The judge thoroughly explained his reasons for the rulings on hearsay, turncoat witnesses, prior inconsistent statements, and denied the motion.

Of note, Vigil does not appeal the denial of the motion for mistrial or the propriety of the judge's evidentiary rulings at trial. As a result, we will not consider those issues because the appellate issue before us has nothing to do with the substance of the district judge's evidentiary rulings. We express no opinion on the substance of the district judge's views about hearsay, turncoat witnesses, and prior inconsistent statements. Rather, we focus our attention on the manner in which the district judge communicated those rulings at some length to the lawyers in front of the jury.

The narrow question presented by Vigil as to the district judge's comments on turncoat witnesses is whether the judge erred in making these comments because they improperly bolstered the credibility of Officer Schmidt. Vigil argues the judge's comments endorsed the officer's credibility by stating that he was not a turncoat witness.

Judges should exercise caution when speaking in front of a jury because juries have a natural tendency to look to a judge for guidance. *State v. Hamilton*, 240 Kan. 539, 547, 731 P.2d 863 (1987). These duties are especially important when a witness' credibility is involved:

> "'The same rule applies with respect to the credibility of a witness and a judge should exercise great care and caution to say nothing within the hearing of the jury which would

12

give them an indication of what he thought about the truth or falsity of any part of the testimony. . . . The judge's attitude and the result he supposedly desires may be inferred by the jury from a look, a lifted eyebrow, an inflection of the voice—in many cases without warrant in fact.'" 240 Kan. at 547.

In Vigil's case, it is apparent that Burke had difficulty complying with the procedures that the district judge outlined prior to trial regarding evidentiary matters. In response, the judge made extended remarks in an effort to explain his rulings to Burke. During these remarks, the judge stated that he did not consider Officer Schmidt a turncoat witness. A turncoat witness is a legal designation describing "[a] witness whose testimony was expected to be favorable but who becomes (usually during the trial) a hostile witness." Black's Law Dictionary 1921 (11th ed. 2019).

The crux of Vigil's argument is the assumption that because the district judge said the officer was *not* a turncoat or hostile witness, the jury would conclude that the judge believed Officer Schmidt was a credible witness. While Vigil's argument is speculative, we are persuaded that the lengthy comments made by the judge on this evidentiary topic were in error because they were communicated in front of the jury. Consequently, a jury might misinterpret the judge's remarks on the meaning of a turncoat witness or surmise the judge believed defense counsel was an ineffective advocate for the defense. The risks of using the legal term in an extended explanation in front of the jury outweighed any potential benefits. When it became apparent that defense counsel was having difficulty complying with the judge's trial procedures, the better practice provides that a judge's lengthy remarks to counsel should be made outside of the jury's presence.

Were the district judge's comments made in these two instances reversible error? No. Applying the constitutional standard, we are convinced they were harmless. The judge did not comment on the credibility of the officers or otherwise suggest bias against Vigil or defense counsel. The judge did not comment on the merits of the defense as

13

Vigil suggests, but he made clear that the witness could not yet be considered a turncoat witness—a legal designation—based on the testimony provided at that point in the trial. The judge also indicated his willingness to recall the officers after impeaching witnesses testified. In explaining his rulings and admonishing defense counsel, the judge did not engage in rude, offensive, or derogatory language, and there is no indication from the record that the judge's demeanor was not judicial. Rather, the judge's reference to a legal treatise to explain his rulings shows his intent was educational rather than denigrating. The "[m]ere possibility of prejudice from a judge's remark is not sufficient to overturn a verdict or judgment." *State v. Miller*, 274 Kan. 113, 118, 49 P.3d 458 (2002).

Although we have discussed the reasons why, in each instance cited by Vigil, we are convinced the judicial comment error did not affect the trial outcome in light of the entire record, there are two additional reasons to conclude that no error, either individually or collectively, was reversible.

First, the district court issued a limiting instruction directing the jury to examine only the facts and law, and not the district judge's reasons in making evidentiary rulings:

> "At times during the trial I have ruled on the admissibility of evidence. You must not concern yourselves with the reasons for these rulings. I have not meant to indicate any opinion as to what your verdict should be by any ruling that I have made or anything I have said or done."

Our Supreme Court has recognized that jury instructions may mitigate prejudice from improper judicial comments. See *Boothby*, 310 Kan. at 629 (finding harmless error when the comments were attenuated by "the rest of voir dire, the evidence at trial, and the jury instructions, which told the jury to 'decide this case only on the evidence admitted' . . . and [told] to base the verdict 'entirely upon the evidence admitted and the law as given in these instructions'").

14

Second, in addition to this jury instruction, the jury considered the substantial incriminating evidence presented over the seven-day trial. In brief, the jury heard eyewitness testimony from the victim, Gracia, who identified Vigil as the person who stabbed him. Gracia and Vigil were cousins and, as a result, Gracia was certain of his attacker's identity. Gracia testified that Vigil walked into the kitchen, pulled out a knife, and began stabbing him. After Vigil stabbed Gracia, they wrestled and fought in the living room until Gracia could escape outside.

Gracia testified that Vigil confronted him during the week prior to the stabbing and accused him of being a confidential informant for the Garden City Police Department, which involved providing names of individuals engaged in criminal activity. One of those individuals was named Gabriel Salinas who allegedly was in the same gang as Vigil and had put "a hit out" on Gracia for turning him into the police. Detective Dustin Loepp confirmed that Gracia worked as a confidential informant for the law enforcement agency and was familiar with Salinas.

There was no dispute that Gracia was stabbed and seriously injured. The defense argued that one of Vigil's companions, Tony Berends or Matthew Currie, could have stabbed Gracia while fighting over the knife. But in addition to Gracia's eyewitness testimony, forensic evidence also tied Vigil to the attack because Gracia's blood was found on Vigil's shoe.

Currie, who had accompanied Vigil to the house that day, confirmed Vigil was at the scene and fought with Gracia. Currie testified that he went to the bathroom and when he came out, he saw Vigil and Gracia wrestling in the kitchen and living room. Currie recalled seeing "a lot of blood." Currie pled guilty to aggravated burglary for his involvement in the crime.

Given the jury instruction to disregard the judge's reasons for ruling on evidentiary matters, the substantial evidence of Vigil's guilt, and the individual reasons discussed earlier with regard to each specific claim of judicial comment error, we conclude that Vigil received a fair trial and that the errors did not affect the outcome of the trial in light of the entire record. See *Chapman*, 386 U.S. at 24; *Ward*, 292 Kan. at 568-69.

Affirmed.